IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HONGDA CHEM USA, LLC, et al., )
)
Plaintiffs, )
) 1:12-CV-1146
v. )
)
SHANGYU SUNFIT CHEMICAL )
COMPANY, LTD., )
)
Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court for a recommended ruling on the motion of Plaintiffs Hongda Chem USA, LLC ("Hongda Chem") and Hongda Group Limited, LLC's ("Hongda Group," and collectively with Hongda Chem, "Hongda") for leave to amend their original Complaint. (Docket Entry 24.) Defendant Shangyu Sufit Chemical Company, Ltd. ("Shangyu Sunfit") opposes the motion. (Docket Entry 27.) For the following reasons, it is recommended that Plaintiffs' motion be granted.

### I. BACKGROUND

This lawsuit concerns a dispute between Shangyu Sunfit, a Chinese manufacturer of a chemical product called N-(n-Butyl) thiophosphoric Triamide ("NBPT") and Hongda, who agreed to be the exclusive distributor of Shangyu Sunfit's NBPT in the United States and Mexico. Hongda seeks to recover damages for Shangyu Sunfit's breach of the parties' exclusivity agreement. Hongda alleges that Shangyu Sunfit created a Canadian company

called YMS Agriculture International, Corp. ("YMS") for the express purpose of circumventing the exclusivity agreement and selling NBPT in the United States and Canada. (Am. Compl. ¶ 1, Docket Entry 24-1.) Shangyu Sunfit alleges that Hongda failed to pay not less than $5,770,050 plus interest to Shangyu Sunfit pursuant to the written agreement between the parties executed in September 2011. (Def. Mem. Opp. Mot. to Amend at 1, Docket Entry 27). Shangyu Sunfit also alleges that Plaintiffs filed their Complaint after Shangyu Sunfit demanded that Hongda pay the money owed Shangyu or it would terminate the agreement. (*Id.* at 2.) Furthermore, Shangyu Sunfit claims that Plaintiffs filed their lawsuit rather than paying the outstanding money owed to Shangyu Sunfit. (*Id.*)

In pertinent part, Plaintiffs allege in their amended complaint (Docket Entry 24-1) the following:

> 8. Hongda is an American company that manufactures and distributes chemical products to a worldwide market, sometimes using regional distribution warehouses in Georgia, South Carolina, North Carolina, Pennsylvania, Texas, and Missouri.
>
> 9. Shangyu Sunfit is a Chinese company that manufactures various chemical products, including N-(n-Butyl) thiophosphoric Triamide ("NBPT"). NBPT is a chemical that is used as an ingredient in fertilizers to improve their performance.
>
> 10. Shangyu Sunfit is not licensed to do business in any state in the United States of America.
>
> 11. YMS is a Canadian company that was formed for the purpose of selling NBPT manufactured by Shangyu Sunfit in North America.
>
> 12. Upon information and belief, YMS is owned by the same four shareholders who are also the owners of Shangyu Sunfit.
>
> 13. In October 2010, Hongda and Shangyu Sunfit entered into a one-year written contract under which Hongda agreed to purchase NBPT from Shangyu Sunfit.

2

14. In September 2011, Hongda and Shangyu Sunfit entered into a second, five-year contract ("Exclusive Sales Contract," a true and accurate copy of which is attached to this amended Complaint as Exhibit A).

15. Under the Exclusive Sales Contract, the parties agreed that Hongda would have the sole and exclusive right to buy and sell NBPT manufactured by Shangyu Sunfit in North America.

16. Under the Exclusive Sales Contract, Hongda agreed to purchase a minimum of 1,000,000 pounds of NBPT from Shangyu Sunfit each year for a period of five years.

17. Under the Exclusive Sales Contract, Shangyu Sunfit agreed to manufacture a minimum of 1,000,000 pounds of NBPT for Hongda's purchase in 2012 and 2013, and a minimum of 2,000,000 pounds of NBPT thereafter. The parties expressly stated that "these are minimums, we expect the volumes to be greater."

18. Hongda agreed to purchase the NBPT for $18.43 per kilogram plus a $0.12 per kilogram freight charge, for a total of $18.55 per kilogram. This purchase price assured that Shangyu Sunfit would sell at least $8.41 million of NBPT per year through Hongda.

19. The parties further agreed that Shangyu Sunfit would ship the NBPT to Philadelphia, PA, and that Hongda would pay the cost of shipping the NBPT from Philadelphia the ultimate consumer.

20. Pursuant to the Exclusive Sales Contract, Shangyu Sunfit agreed that it would not sell NBPT in North America to any third parties other than Hongda, either directly or through her distributors, for the length of the Exclusive Sales Contract. Paragraph 4 of the Exclusive ales Contract provides:

> No material shall be sold in North America (USA and Canada) by Sunfit directly or [through] other representatives than Hongda Cherm USA during the time frame this agreement is in effect.

21. In reliance on this exclusivity provision, Hongda spent significant resources developing the North American market for NBPT and building relationships with prospective purchasers of NBPT.

3

22. In furtherance of the Exclusive Sales Contract, Hongda purchased significant amounts of NBPT from Shangyu Sunfit, earning Shangyu Sunfit a significant profit.

23. Hongda then entered into a contract with Albemarle Corporation ("Albemarle"), a customer which Hongda had developed in reliance on the Exclusive Sales Contract. Under this contract, Hongda sold NBPT to Albemarle.

24. Unbeknownst to Hongda, Shangyu Sunfit had created YMS in March 2011 to sell NBPT to purchasers in North America.

25. Upon information and belief, Shangyu Sunfit passed a shareholders resolution authorizing the sale of NBPT through YMS to North American buyers.

26. While negotiating the Exclusive Sales Contract, Shangyu Sunfit misrepresented its sales activities in North America and also misrepresented its intentions to use Hongda as its exclusive distributor of NBPT.

27. YMS had knowledge of the Exclusive Sales Agreement between Hongda and Shangyu Sunfit. In fact, YMS knew certain confidential and proprietary details that only could have been learned from Shangyu Sunfit.

28. YMS approached Hongda's customers and other buyers in North America and encouraged them to buy NBPT from YMS, thereby circumventing Hongda.

29. In order to induce these customers and buyers to purchase NBPT, YMS misrepresented the scope of the exclusivity provision contained in the Exclusive Sales Contract.

30. Notwithstanding the exclusivity agreement, Shangyu Sunfit used YMS to sell NBPT to purchasers in North America to sell NBPT in blatant violation of the Exclusive Sales Contract.

31. YMS knowingly and intentionally interfered with the existing contract between Hongda and Shangyu Sunfit.

32. For example, beginning in January 2012, YMS approached Agrium Advanced Technologies, Inc. ("Agrium") which is located in Omaha, Nebraska, and attempted to sell NBPT to Agrium for use in their plant in the United States.

4

33. YMS expressly represented to Agrium that it was formed by Shangyu Sunfit for the purpose of selling NBPT manufactured by Shangyu Sunfit in North America.

34. On or about April 1, 2012, YMS arranged for representatives of Agrium to visit Shangyu Sunfit's plant in China so that Agrium could see the production facilities of Shangyu Sunfit first hand.

35. YMS falsely represented to Agrium that Hongda's exclusivity provision did not apply to sales to Agrium.

36. YMS falsely represented to Agrium that Hongda did not pay its bills on time.

37. YMS subsequently sold NBPT manufactured by Shangyu Sunfit to Agrium, and Agrium used the NBPT at their [facility] in Alabama.

38. Upon information and belief, Shangyu Sunfit and YMS have sold NBPT to other consumers in North America, used similar deceptive conduct in making those sales, further interfered with Hongda's contracts, and concealed their conduct from Hongda.

39. As a result of the wrongful conduct and unlawful acts of Shangyu Sunfit and YMS, Hongda has suffered direct sales losses and future opportunities to expand the market.

40. The total amount of lost profits suffered as a result of the wrongful conduct of Shangyu Sunfit and YMS exceeds $10,000,000.

(Am. Compl. ¶¶ 8-40, Docket Entry 24-1.)

Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201, and also allege claims for a breach of contract, intentional interference with contractual relationship against Shangyu Sunfit and YMS, fraud against Shangyu Sunfit and a violation of North Carolina's Unfair and Deceptive Trade Practices Act.

## II. DISCUSSION

Plaintiffs filed a motion for leave to amend their complaint and to add a defendant. (Docket Entry 24.) Plaintiffs assert that through the discovery process they learned of Defendant's alleged fraud and unfair and deceptive trade practices. (Am. Compl. ¶¶ 67-89, Docket Entry 24-1.) Defendant contends that Plaintiffs should not be allowed to amend their complaint because their claims are futile and would not survive a 12 (b)(6) motion to dismiss. (Def. Mem. Opp. Mot. to Amend at 5, Docket Entry 27).

Plaintiffs' motion to amend pursuant to 15(a) of the Federal Rules of Civil Procedure may be granted by leave of the court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* A reason not to grant a motion for amendment is "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "An amendment would be futile if the amended claim would fail to survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Syngenta Crop Prot., Inc. v. U.S.E.P.A*, 222 F.R.D. 271, 278 (M.D.N.C July 12, 2004) (citing *Shanks v. Forsyth County Park Auth.*, 869 F. Supp. 1231, 1238 (M.D.N.C. 1994)). The court should deny a motion to amend on the basis of futility only "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim of relief that is plausible on

6

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* at 555. "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (*quoting Twombly*, 550 U.S. at 570). As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain

7

statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 does not, however, unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id.* at 555 (internal citations omitted). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416, U.S. 232, 236 (1974)).

To survive a Rule 12(b)(6) motion to dismiss a fraud claim, a plaintiff must generally "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To properly plead actionable fraud in North Carolina, Plaintiffs must allege: "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *West v. Houchin*, 10CV936, 2012 WL 2810298 at *4 (M.D.N.C. July 10, 2012) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138 209 S.E. 2d 494 (1974)). To satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must allege facts establishing the "who, what, when, where, and how" of the claimed fraud. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation omitted). The general rule that pleadings are to be given liberal construction does not apply to claims of fraud. *Rosenthal v. Perkins*, 42 N.C. App. 449, 452, 257 S.E.2d 63, 65 (1979).

Plaintiffs allege that in March 2011 YMS was created for the purpose of selling NBPT in North America. (Am. Compl. ¶ 11 Docket Entry 24-1.) Plaintiffs contend that despite Defendant's knowledge of YMS selling in North America, Defendants entered into an "Exclusive Sales Contract" with them on September 2011. (*Id.* ¶ 14.) Plaintiffs assert that based on their "Exclusive Sales Contract," Hondga spent significant resources developing the North American market and building relationships with prospective purchasers. (*Id.* ¶ 21.) Plaintiffs allege that on January 12, 2012, YMS started marketing NBPT to Agrium. (*Id.* ¶ 32.) Plaintiffs were already marketing NBPT to Agrium prior to YMS's involvement. (*Id.*) Plaintiffs allege that YMS expressly represented to Agrium that Defendant formed it for the purpose of selling NBPT in North America. (*Id.* ¶ 33.) YMS subsequently sold NBPT to Agrium. (*Id.* ¶ 37.) Plaintiffs claim that as a result of Defendant's conduct they suffered direct sale losses and future opportunities to expand the market. (*Id.* ¶ 39.)

Viewing the amended complaint in its entirety, the undersigned finds that Plaintiffs have pled fraud with sufficient specificity. Plaintiffs have also sufficiently pled allegations in their amended complaint regarding its unfair and deceptive trade practices claim. "[A] proper allegation of fraud is also the basis for an unfair and deceptive trade practices claim." *Wilson v. McAleer*, 368 F. Supp. 2d 472, 478 (2005) (citing *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417, 537 S.E. 2d 248, 266 (2000)). Therefore, Defendant's argument that the Plaintiffs' amended complaint is futile because it would not survive a 12(b)(6) motion to dismiss is without merit.

Defendant also argues that Plaintiffs' motion for leave to amend is untimely. The motion is indeed outside the deadline set forth in the Rule 26 Report. The Federal Rule of Civil Procedure 16(b)(4) states that "a schedule may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). When determining if good cause exists to amend, "the primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel Cnty., Md.*, 182 Fed. App'x. 156, 162 (4th Cir. 2006) (citing *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 632 (D. Md. 2003)).

The reasons asserted by Plaintiffs for the timing of their motion are convincing. Plaintiffs allege that they learned of Defendant's relationship with YMS through discovery produced by Agrium on April 8, 2013. (Pls.' Mot. Leave to File Am. Compl. ¶ 15, Docket Entry 24.) According to Plaintiffs, in March 2011, Defendant secretly created YMS and enacted a shareholder resolution authorizing YMS to sell NBPT in North America. (Am. Compl. ¶¶ 11-12, 24, Docket Entry 24-1.) It is alleged that this action took place just prior to Plaintiffs and Defendant entering into a five year Exclusive Sales Agreement in September 2011. (*Id.* ¶ 14.) The parties exchanged Rule 26(a)(1) disclosures on February 11, 2013. (Pls.' Mot. Leave to File Am. Compl. ¶ 10, Docket Entry 24.) Plaintiffs made requests for production from several non-parties starting February 21, 2013, specifically requesting production from Agrium Production on March 14, 2013. (*Id.* ¶¶ 10-13.) After receiving production on April 8, 2013, Plaintiffs made a motion to amend their complaint on April 24, 2013, due to the new information discovered. (Docket Entry 24.) Plaintiffs have demonstrated diligence in discovering information necessary to amend their

complaint. Therefore, the Rule 16(b)(4) requirement for the plaintiff to show "good cause" for amending a compliant after the scheduling deadline is satisfied.

For the foregoing reasons and in the interest of justice, Plaintiffs' motion to amend its complaint should be granted. Also, the undersigned finds no basis to deny Plaintiffs' motion to add YMS as a defendant. Specifically, the court finds adding YMS would not constitute unfair prejudice or surprise; Defendant would have a reasonable opportunity to meet the new evidence which would accompany YMS being added as a defendant. Lastly, absent an apparent or convincing argument that granting Plaintiffs' motion would be futile, Plaintiffs' motion to add YMS as a defendant should be granted.

## III. CONCLUSION

For the reasons stated herein, **IT IS RECOMMENDED** that the court **GRANT** Plaintiffs' motion (Docket Entry 24) to amend its Complaint, and YMS be added as a defendant in this matter.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
October 8, 2013