# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| HONGDA CHEMICAL USA, LLC, et al., | )<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | )<br>)<br>) |
| SHANGYU SUNFIT CHEMICAL COMPANY, LTD., et al., | )<br>)  1:12CV1146<br>) |
| Defendants/Third-Party Plaintiff, | )<br>)<br>)<br>) |
| v. | )<br>)<br>) |
| GARY DAVID MCKNIGHT, et al., | )<br>)<br>) |
| Third-Party Defendants. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court upon Third-Party Defendants Gary David McKnight, Raymond P. Perkins, Wei Xu, Eco Agro Resources, LLC ("Eco Agro"), Vasto Chemical Company, Inc. ("Vasto"), and Kadi Resources, LLC's ("Kadi") (hereinafter referred to as "Third-Party Defendants") motion to dismiss (Docket Entry 55) the Third-Party Complaint filed by Third-Party Plaintiff Shangyu Sunfit Chemical Company, Ltd. ("Sunfit"). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will recommend that the motion be granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

Plaintiffs Hongda Chemical USA, LLC ("Hongda Chem") and Hongda Group Limited, LLC ("Hongda Group") (collectively "Hongda") filed suit against Sunfit alleging several causes of action arising from Sunfit's alleged intentional breach of an exclusivity provision in a sales contract executed by the parties. (*See generally* Complaint, Docket Entry 1.) Sunfit filed an Answer and asserted counterclaims against Hongda. (Docket Entry 8.) An Amended Complaint was subsequently filed adding Defendant YMS Agriculture International Corporation ("YMS") to this action.[1] (Am. Compl., Docket Entry 37.) Sunfit filed an Answer to the amended Complaint, alleging counterclaims against Hongda. (Am. Ans., Docket Entry 38.) On March 2, 2015, Sunfit filed amended counterclaims against Hongda and a Third-Party Complaint against Gary David McKnight, Raymond P. Perkins, Wei Xu, Eco Agro Resources LLC, Vasto Chemical Company, Inc., and Kadi Resources LLC. (Docket Entry 48.) On March 4, 2015, Sunfit again amended its counterclaims and amended its Third-Party Complaint. (Docket Entry 51.) Third-Party Defendants thereafter filed a motion to dismiss the Third-Party Complaint for failure to state a claim. (Docket Entry 55.) Sunfit has filed a response. (Docket Entry 58.) A hearing was held in this matter on December 8, 2015. (Minute Entry dated 12/8/2015.)

## II. FACTUAL BACKGROUND[2]

Viewing the evidence in the light most favorable to Sunfit, the material facts may be summarized as follows. Sunfit is a manufacturer that specialized in the "research, production

---

[1] YMS also filed an Answer. (Docket Entry 44.)
[2] The facts summarized herein are material to the pending motion.

and trade of fertilizer additives, pharmaceutical intermediates and food additives, including N-(n-Butyl) thiophosphoric Triamide ("NBPT")." (Am. Countercl. ¶ 13, Docket Entry 51.) Hongda Chem is a North Carolina limited liability company that sells chemical products. (*Id.* ¶¶ 3, 11.)[3] Third-Party Defendants in the present proceeding are: three of Hongda's principals named Gary David McKnight (President and CEO of Hongda), Raymond P. Perkins (Hongda Officer and also a managing member of Eco Agro Resources) and Wei Xu (Hongda Officer); Eco Agro Resource, LLC, Vasto Chemical Company Inc., and Kadi Resouces LLC. (Am. Compl. ¶¶ 11-15, Docket Entry 51.) In pertinent part, Sunfit alleges the following:

> 37. Prior to entering into the Agency Contract, Hongda and its principals, Gary David McKnight (McKnight"), Raymond P. Perkins ("Perkins") and Wei Xu ("Xu"), entities used by these individuals including Eco Agro Resources LLC, Vasto Chemical Company, Inc. ("Vasto"), KaDi Resources LLC and other, as yet unnamed, conspirators (collectively with Hongda, the "Hongda Affiliates"), conspired to create a competing venture in violation of both its agreements with Sunfit and with Albemarle Corporation and to improperly retain fraudulently transferred funds belonging to Sunfit.
>
> . . .
>
> 41. Worse yet, the Hongda Affiliates devised a scheme whereby they would induce Sunfit to manufacture and ship NBPT to Hongda, which would in turn sell this NBPT to Albemarle and, rather than pay Sunfit for this NBPT on the terms agreed, the Hongda Affiliates would fraudulently transfer the proceeds from these sales out of Hongda and then improperly invest the proceeds of these sales into the scheme, essentially using Sunfit's funds to build this new, competing distribution system for the sale of NBPT from China to the United States.
>
> . . .
>
> 43. Once Sunfit realized that Hongda had defrauded it and did not intend to pay over the many millions of dollars collected on Sunfit's behalf, it sent a demand letter threatening the present litigation absent payment. Within minutes

---

[3] According to Sunfit, Hongda Group is the alter ego of Hongda Chem. (Am. Compl. ¶ 11, Docket Entry 51.)

3

of the deadline established by Sunfit for payment of these funds, Hongda sued Sunfit claiming falsely that there was no obligation to pay over Sunfit's money because Sunfit had been selling NBPT into the North American market in violation of the Agency Contract.

44. Thereafter, once this litigation commenced, Perkins sent a December 20, 2012 e-mail where he set out the basic structure through which the Hongda affiliates would begin to operate now that they had taken everything they could from Sunfit; they would organize a new entity, which ultimately became Eco Agro on December 31, 2012, and this new entity would take over the sale of NBPT in North America on behalf of the Hongda Affiliates.

. . .

2. More specifically, the Third-Party Defendants aided, abetted and were, in many cases, the recipients of . . . fraudulent transfers . . . . The Third-Party Defendants are necessary parties in that, as beneficiaries of the fraud alleged in the Counterclaims, and given that all of the Hongda assets have been siphoned off to the Third-Party Defendants or their designees, recovery from Hongda under the Counterclaims would ultimately be a pyric victory.

3. Pursuant to the Agency Contract, Hongda was appointed agent for Sunfit with respect to sales of a certain Sunfit chemical product in the United States and, upon receiving payment for the products sold in the United States, Hongda was to take a three percent (3%) commission and remit the balance of the funds paid to Sunfit within ninety (90) days from the date shipment.

4. Since August of 2012, Hongda has defaulted in the payment of material sums due under the Agency Contract.

5. Specifically, no payment has been received from Hongda since August, 2012, despite the fact that Hongda has been paid by the ultimate consumers of the Sunfit product; past due payments from Hongda under the Contract have now accumulated to an aggregate in the principal sum of $5,770,050, plus interest since date of breach.

(*Id.* ¶¶ 1-5; Am. Countercl. ¶¶ 37, 41-44, Docket Entry 51.) Sunfit brought this action alleging that Third-Party Defendants conspired to take Sunfit's proceeds to finance their own NBPT distribution system in violation of the North Carolina Unfair and Deceptive Trade Practices

4

Act ("UDTPA") and the North Carolina Uniform Fraudulent Transfer Act ("UFTA"). (Am. Countercl. ¶¶ 37, 41-44; Am. Compl. ¶6, Docket Entry 51.)

## III. DISCUSSION

### A. Standard of Review

Third-Party Defendants argue that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the "sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A motion to dismiss a complaint should be granted if the complaint does not meet the requirements of Rule 8. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has explained that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citations and quotations omitted). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face must be dismissed.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quotations and citations omitted). In other words, the standard "requires the

5

plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 557)

**B. ANAYLSIS**

**Sunfit's UDTPA Claim**

Sunfit argues that Third-Party Defendants' acts of withholding Sunfit's proceeds and using them to finance a competing venture were deceptive and unfair so as to place Third-Party Defendants' conduct within the scope of the UDTPA. (Pl.'s Resp. at 15, Docket Entry 58.) The North Carolina UDTPA is intended to prevent "unfair or deceptive acts or practices in or affecting commerce." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 794, 561 S.E.2d 905, 910 (2002) (citation and quotation omitted). A plaintiff asserting an UDTPA claim must show: "(1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." *Id.* An unfair practice is one that "offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald Bros. v. Tinder Wholesale, LLC*, 395 F. Supp. 2d 255, 269 (M.D.N.C. 2005) (internal citations and quotation omitted). "An act is deceptive if it has the capacity or tendency to deceive[.]" *Bailey v. LeBeau*, 79 N.C. App. 345, 352, 339 S.E.2d 460, 464 (1986) (quoting *Lee v. Payton*, 67 N.C. App. 480, 482 (1984)). "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA]." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (citing *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992)).

6

Third-Party Defendants contend that Sunfit "has not alleged that any of the Third Party Defendants made any representations to it." (Third-Party Defs.' Reply Br. at 8, Docket Entry 56.) However, "[w]hether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace." *White v. Thompson*, 196 N.C. App. 568, 578, 676 S.E.2d 104, 111 (2009) *aff'd*, 364 N.C. 47, 691 S.E.2d 676 (2010) (citations and quotations omitted). A review of the complaint here shows that Sunfit has alleged substantial aggravating circumstances sufficient to state a UDTPA claim. Sunfit alleges that Third-Party Defendants conspired to retain funds belonging to Plaintiff to create a competing venture which would manufacture and sell NBTP. (Am. Countercl. ¶¶ 37-38, 56, Docket Entry 51.) Sunfit alleges that an email "from Perkins to McKnight and Xu" suggest that the officers were upset that the agreement between Sunfit and Hongda would not allow Hongda to bring NBTP into the United States unless purchased from Sunfit and that someone had leaked their secret plan. (*Id.* ¶ 40.) Sunfit also indicates that there were emails suggesting that the Third-Party Defendants' plans for Eco Argo had to be accelerated because of litigation. (*Id.* ¶ 45.)

The alleged egregious factors highlighted in Sunfit's Third-Party Complaint elevate the matter from a mere breach of contract to a violation of the UDTPA. *McDonald Bros.*, 395 F. Supp. 2d at 269 (stating that "a breach must be particularly egregious to permit recovery under § 75–1.1"). Essentially, Sunfit alleges that, from the start, the officers planned to pretend to comply with the agreement between Hongda and Sunfit in order to retain proceeds to finance a new competing venture to sell NBTP. (Am. Countercl. ¶¶ 37-45, 56, Docket Entry 51.) Concerning the officers' alleged acts, scheming to enter into a contract for the purpose of

7

using Sunfit's proceeds to finance a new venture is clearly unethical, immoral, and unscrupulous. *McDonald Bros.*, 395 F. Supp. 2d at 270 (concluding that the defendant violated the UDTPA because it told the plaintiff that a warranty would be honored in bad faith and subsequently asserted that the express or implied warranties were waived); *Pedwell v. First Union Nat. Bank of N. Carolina*, 51 N.C. App. 236, 237-38, 275 S.E.2d 565, 567 (1981) (reasoning that two parties conspiring to prevent another from performing under a contract is considered unfair and affecting commerce under the UDTPA). Eco Agro, Vasto, and Kadi's alleged conduct of conspiring to receive Sunfit's proceeds is also unethical, immoral, and unscrupulous. *In re EBW Laser, Inc.*, No. 05-10220C-7G, 2008 WL 1805575, at *2-3 (Bankr. M.D.N.C. Apr. 21, 2008) (concluding that a company's UDTPA claim was sufficient to survive a motion for judgment on the pleadings because the defendants allegedly violated their fiduciary duty by transferring funds belonging to the company to a third party to hinder, delay and defraud creditors of the company); *Pedwell*, 51 N.C. App. at 237-38, 275 S.E.2d at 567. In sum, the unfairness prong of the UDTPA is satisfied.

Next, Third-Party Defendants' allegedly unfair and deceptive acts affect commerce. Commerce has been defined as "the exchange of goods and services or trade and other business activities." *Country Vintner of N. Carolina LLC v. E. & J. Gallo Winery, Inc.*, No. 509CV326BR, 2010 WL 4105455, at *3 (E.D.N.C. Oct. 18, 2010) *aff'd sub nom.* 461 F. App'x 302 (4th Cir. 2012) (internal citations and quotations omitted). Third-Party Defendants' alleged acts affect commerce because the acts concern a controversy over proceeds amounting to at least 5.7 million dollars for the exchange of NBPT, a chemical good, between two companies. Therefore, the second element is satisfied.

Third-Party Defendants' alleged conduct would be the proximate cause of Sunfit's injury. Proximate cause is defined as:

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Strates Shows, Inc. v. Amusements of Am., Inc.*, 184 N.C. App. 455, 462, 646 S.E.2d 418, 424 (2007) (internal quotations and citations omitted). According to Sunfit's allegations, Third-Party Defendants are the "but-for" cause of Sunfit's injury because no independent intervening act interrupted Third-Party Defendant's actions that caused Sunfit's alleged injuries. *Id.* at 463-65. (stating that the plaintiff's claim did not meet the proximate cause standard because the plaintiff failed to establish "that but for the defendant's illegal conduct [they] would have been awarded a contract"); *Huff v. Autos Unlimited, Inc.*, 124 N.C. App. 410, 414, 477 S.E.2d 86, 89 (1996) *writ denied, review denied*, 346 N.C. 279, 487 S.E.2d 546, 547(1997) (reasoning that the defendant was the proximate cause of the plaintiff's injuries resulting from purchasing a damaged vehicle because she "purchased th[e] car based on the assurances of defendant . . . and would not have purchased the car had she known it was a reconstructed vehicle"). Furthermore, it could be reasonably foreseen that Third-Party Defendants' alleged act of conspiring to breach the contract to confiscate Sunfit's proceeds would cause Sunfit's injury. *Wyatt v. Gilmore*, 57 N.C. App. 57, 58, 290 S.E.2d 790, 791 (1982) (concluding that "a tort-feasor is liable if, by the exercise of reasonable care, he might have foreseen that some injury would result from his conduct or that consequences of a generally injurious nature might have

9

been expected"). Thus, Sunfit's claim sufficiently satisfies the proximate cause element. In sum, Sunfit's UDTPA claim should not be dismissed.

**Sunfit's UFTA Claim**

Next, Third-Party Defendants also argue that Sunfit's UFTA claim should be dismissed. (Third-Party Defs.' Br. at 12, Docket Entry 56.) Third-Party Defendants' sole argument is that Sunfit's UFTA claim is not pled with particularity. (*Id.*) "In addition to meeting the plausibility standard of *Iqbal*, fraud-based claims must be pleaded with particularity pursuant to Rule 9(b) . . . ." *In re Whitley*, No. 10-10426, 2013 WL 486782, at *9 (Bankr. M.D.N.C. Feb. 7, 2013) (internal quotation omitted). Sunfit asserts both actual and constructive fraud claims under the UFTA. (Am. Countercl. ¶¶ 60-65, Docket Entry 51.)

Actual Fraud

First, Sunfit's allegations are sufficient to plausibly establish an actual fraud claim that meets the requirements of Rule 8. "Under [North Carolina's Uniform Fraudulent Transfer Act], a transfer is actually fraudulent if it is made with the intent to hinder, delay, or defraud a creditor of the debtor." *Thimbler, Inc. v. Unique Sols. Design, Ltd.*, No. 5:12-CV-695-BR, 2013 WL 4854514, at *7 (E.D.N.C. Sept. 11, 2013) (citing N.C. Gen. Stat. § 39–23.4(a)(1)). Sunfit alleges that Third-Party Defendants conspired to receive fraudulent transfers to establish a new venture for the purpose of manufacturing and selling NBPT. (Am. Countercl. ¶¶ 37-38, 56-57, Docket Entry 51.) Sunfit further alleges that the transfers were "made with intent to hinder, delay, or defraud Plaintiff . . . ." (*Id.* ¶ 60.) "[W]hile each fact does not have to demonstrate actual fraud, the facts taken together must lead to the conclusion that actual fraud existed." *In re Tanglewood Farms, Inc. of Elizabeth City*, No. 10-06719-8-JRL, 2013 WL 1405729,

at *9 (Bankr. E.D.N.C. Apr. 8, 2013) (internal citations and quotations omitted); *Thimbler*, 2013 WL 4854514, at *8. The alleged act of entering the contract in bad faith and conspiring to collect Sunfit's proceeds to fund another venture is sufficient to establish Third-Party Defendants' intent to defraud Plaintiff under the UFTA. *Tavenner v. Smoot*, 257 F.3d 401, 404-05, 408 (4th Cir. 2001) (concluding that the evidence supported intent to defraud because the defendant transferred $200,000 to a corporation owned "entirely by members of [the defendant's] immediate family, and received no consideration in" return after two entities obtained judgments against the defendant); *Nytco Leasing, Inc. v. Se. Motels, Inc.*, 40 N.C. App. 120, 122, 131, 252 S.E.2d 826, 829, 833-34 (1979) (concluding that the defendant's attempt to convey ten parcels of land to his wife for 100 dollars after the plaintiff filed suit against the defendant to recover a large sum money was sufficient for a jury to infer that defendant and his wife intended to defraud the plaintiff). Therefore, Sunfit's actual fraud claim meets the Rule 8 plausibility standard.

Secondly, Sunfit's actual fraud claim must be pled with particularity. *In re Whitley*, 2013 WL 486782, at *13. With respect to fraudulent transfer claims, both the North Carolina Middle District Bankruptcy Court and the North Carolina Eastern District Court have applied a particularity test derived from the Bankruptcy Code concerning fraudulent transfers and obligations. *Id.* at 12 (reasoning that following the Bankruptcy Code "in order to give meaning to state statutes" is in harmony with what several courts have done in the past); *Thimbler*, 2013 WL 4854514, at *7 (applying the Bankruptcy Code fraudulent transfer test for particularity). The test requires that the complaint allege "(1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfers and (3) the consideration

11

paid with respect thereto." *Thimbler*, 2013 WL 4854514, at *7; *In re Whitley*, 2013 WL 486782, at *13.

Sunfit satisfies the first prong of the test. It states that "Hongda intended to improperly retain and use some or all of the revenues that were intended to be delivered to Sunfit upon a sale of NBPT, notwithstanding the obligation to remit these revenues to Sunfit." (Am. Countercl. ¶ 56, Docket Entry 51.) Sunfit further states that "a portion of the revenues due to be remitted to Sunfit were used to finance the establishment of [a] new Chinese manufacturer," and some portions were taken by Third-Party Defendants. (*Id.* ¶ 58.) This puts Third-Party Defendants on notice that the property subject to the transfer is the proceeds allegedly confiscated by Third-Party Defendants.

Regarding timing and frequency, the Fourth Circuit has not addressed what is sufficient to satisfy the Rule (9)(b) timing prong in fraudulent transfer cases. Moreover, district courts in North Carolina have rarely addressed this issue. In *Thimbler*, the Court found that the timing prong was not satisfied because the "complaint [did] not identify the date of the transfer . . . or the relationship between the timing of the transfer and the date that [the plaintiff's] claim arose." 2013 WL 4854514, at *7. To the contrary, in *F.D.I.C. v. Mingo Tribal Pres. Trust*, the Court found that although the plaintiff did not identify the date of the transfer, the complaint satisfied Rule (9)(b) because "[d]efendants [had] notice of the time period of the alleged tortious activities, namely the years of the lending relationship." No. 5:13-CV-113, 2015 WL 1646751, at *5 (W.D.N.C. Apr. 14, 2015). Additionally, in *In re Whitley*, the Middle District Bankruptcy Court found that "[w]hile the complaint [did] not . . . give the date of each

12

deposit/transfer," alleging that all transfers made between 2008 and 2010 were fraudulent satisfied the timing prong. 2013 WL 486782, at *13.

The Court finds that this case is distinguishable from *Thimbler*, because unlike this case, the plaintiff in *Thimbler*, "failed to inject any measure of substantiation into its allegations regarding the factual circumstances surrounding the fraud." 2013 WL 4854514, at *7. Here, Sunfit's Third-Party Complaint provides information regarding the Third-Party Defendants' alleged scheme to take Sunfit's proceeds to fund a new business venture. (Am. Countercl. ¶¶ 37-45, Docket Entry 51.) Sunfit's Third-Party Complaint does not identify the year, or how many transfers were made; however, in *In re Whitley*, the Bankruptcy Court in this district held that the particularity requirements may be relaxed in situations in which the information regarding the fraudulent act is only in the hands the defendant. 2013 WL 486782, at *13 (concluding that "Rule 9(b) may be relaxed when a plaintiff alleges facts particularly within the knowledge of the defendant"); see also *DiMare v. MetLife Ins. Co.*, 369 F. App'x 324, 330 (3d Cir. 2010) (stating that a plaintiff is not required "to have personal knowledge of the details of corporate internal affairs" and therefore the rule is relaxed "when factual information is peculiarly within the defendant's knowledge or control") (internal citation and quotation omitted); *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1988) (reasoning that "in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control"). Under the circumstances, there is no way for Sunfit to discover details regarding the date, amount, and how much of the proceeds were allegedly transferred to each Third-Party Defendant. Thus, with respect to timing, Sunfit has satisfied the relaxed particularity standard.

13

Regarding consideration, Sunfit states that Third-Party Defendants transferred the proceeds "without receiving a reasonably equivalent value in exchange for the transfer." (*Id.* ¶ 60). In its complaint, Sunfit does not provide facts to support this assertion. However, as stated above, "[t]he requirements of Rule 9(b) may be relaxed when a plaintiff alleges facts particularly within the knowledge of the defendant." *In re Whitley*, 2013 WL 486782, at *13. In the instant case, Hongda and Third-Party Defendants are the only parties that could know whether consideration was given by Third-Party Defendants in exchange for the alleged fraudulent transfers. Thus, because Rule 9(b) is relaxed under the circumstances, Sunfit's claim is sufficient to survive Rule 9(b). *In re Whitley*, 2013 WL 486782, at *13. Furthermore, Rule (9)(b) is intended to be analyzed in harmony with the theory of Rule 8 which only requires "simple, concise, and direct allegations." *Id.* The claim must make Third-Party Defendants "aware of the particular circumstances for which [they] will have to prepare a defense at trial, and" the court must be satisfied "that plaintiff has substantial pre-discovery evidence of those facts." *Id.* Rule 9(b) "is not intended to be an insurmountable hurdle for claimants to overcome." *Id.* Here, Third-Party Defendants are aware of the circumstances needed to prepare for trial including the alleged conspirators, the general scheme, when Third-Party Defendants allegedly decided to implement the scheme, and the property at issue. (Am. Countercl. ¶¶ 37-45, Docket Entry 51.) Thus, Rule 9(b) is satisfied with respect to Sunfit's actual fraud claim.

<u>Constructive Fraud</u>

Next, Sunfit alleges that Third-Party Defendants' acts constitute constructive fraud. "Constructively fraudulent transfers, in contrast to those based on actual fraud, focus on the

effect the transfer had on the debtor's financial condition without regard for the debtor's state of mind or intentions." *Thimbler*, 2013 WL 4854514, at *8 (citation omitted). Constructive fraud can be established under two separate statutes.[4] N.C. Gen. Stat. §§ 39–23.4(a)(2), 39–23.5. "To establish a claim under "N.C. Gen. Stat. § 39–23.4(a)(2), [Sunfit] must allege facts showing that [Hongda] was either engaged in a business transaction for which its remaining assets were unreasonably small in relation to the transaction or that [Hongda] knew [the] debt incurred was beyond its ability to pay." *Id.* Moreover, "[t]o plead a claim for constructive fraudulent transfer under N.C. Gen. Stat. § 39–23.5, [Sunfit] must allege facts showing that [Hongda] was insolvent at the time of the transfer or that [Hongda] became insolvent as a result of the transfer." *Id.* (citing *Miller v. First Bank*, 206 N.C. App. 166, 169, 696 S.E.2d 824, 827 (2010)).

Sunfit fails to state a plausible claim to establish relief for constructive fraud under either statute.[5] According to *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *In re Bateman*, No. 10-06206-8-RDD, 2012 WL 1110080, at *2 (Bankr. E.D.N.C. Apr. 2, 2012) (quoting *Iqbal*, 556 U.S. at 678). In its complaint, Sunfit merely recites the elements needed to establish a claim pursuant

---

[4] A fraudulent transfer claim can be brought under N.C. Gen. Stat. § 39–23.5 if the claim arose before the transfer was made. N.C. Gen. Stat. § 39–23.5. A fraudulent transfer claim can be brought under N.C. Gen. Stat. § 39–23.4(a)(2) whether the creditor's claim arose before or after the transfer. N.C. Gen. Stat. § 39–23.4(a)(2).

[5] "Federal Rule of Civil Procedure 9(b), which requires the circumstances of fraud to be stated with particularity, is not applicable to claims of constructive fraudulent transfer." *Thimbler*, 2013 WL 4854514, at *8 n.5. *See also In re Caremerica, Inc.*, 409 B.R. 737, 755 (Bankr. E.D.N.C. 2009) ("Rule 9(b) does not apply to claims for avoidance of constructively fraudulent transfers because such claims are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of consideration provided by the transferee.")

15

to N.C. Gen. Stat. § 39–23.4(a)(2) and § 39–23.5. Sunfit states that "[e]ach of these transfers by Hongda w[ere] made at a time when Hongda did not have remaining assets sufficient to pay the amounts owed to Sunfit." (Am. Countercl. ¶ 61, Docket Entry 51.) Next, Sunfit states that Hongda intended to incur debts beyond its ability to pay. (*Id.* ¶ 62.) Subsequently, Sunfit states that "[a]s a result of the transfers at issue Hongda became insolvent." (*Id.* ¶ 65.) However, Sunfit failed to plead facts regarding Hongda's financial condition to allow the Court to draw reasonable inferences that Hongda was insolvent or that its remaining assets were unreasonably small in relation to the transaction. *See id.*; *Thimbler*, 2013 WL 4854514, at *8 (holding that the plaintiff failed to plead facts about the defendant's finances other than two conclusory statements that mirrored the language of the UFTA). Although Sunfit alleged facts that would support its constructive fraud claim in its response, these facts were not in its amended complaint. (Sunfit Response Br. at 19, Docket Entry 58.) Therefore, although Sunfit's actual fraud claim survives Third-Party Defendant's motion to dismiss, it has not established a plausible constructive fraud claim. *In re Operations NY LLC*, 490 B.R. 84, 95-96, 98 (Bankr. S.D.N.Y. 2013) (concluding that one of the plaintiff's intentional fraudulent transfer claims was sufficient to survive a motion to dismiss, while two of the plaintiff's constructive fraudulent transfer claims were "legally insufficient").

### C. Leave to Amend Third-Party Complaint

Sunfit contends that it should be granted leave to amend its complaint if Third-Party Defendant's motion is granted. "This district's Local Rules require a proposed amended pleading to be attached to any motion for leave to amend a pleading." L.R. 15.1; *Robinson v. Pepsi Bottling Grp.*, No. 1:13CV729, 2014 WL 2048127, at *4 (M.D.N.C. May 19, 2014). "The

16

obvious purpose is to avoid having cases thrust into limbo on such generalized requests that may later prove unsupported." *Robinson*, 2014 WL 2048127, at *4. Here, Sunfit did not file a motion for leave to amend the complaint; nor has it attached a proposed amended complaint to its response. L.R. 15.1; *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)(concluding that "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief") (citations and quotations omitted). Therefore, Sunfit's request to amend the constructive fraud complaint should be denied.

## IV. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Third-Party Defendants' Motion to dismiss (Docket Entry 55) be **GRANTED IN PART AND DENIED IN PART**. Third-Party Defendant's motion should be granted as to Sunfit's claim for constructive fraud. As to Sunfit's remaining claims (UDTPA claim and UFTA actual fraud claim), Third-Party Defendant's motion should be denied.

To the extent Sunfit seeks to amend its Third-Party Complaint, **IT IS RECOMMENDED** that Sunfit's request be denied.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
February 18, 2016