# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| HONGDA CHEM USA, LLC, and HONGDA GROUP LIMITED, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SHANGYU SUNFIT CHEMICAL COMPANY, LTD. and YMS AGRICULTURE INTERNATIONAL CORP., | ) ) ) ) ) | |
| Defendants. | ) ) | 1:12CV1146 |
| and | ) ) | |
| SHANGYU SUNFIT CHEMICAL COMPANY, LTD., | ) ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| GARY DAVID MCKNIGHT; RAYMOND P. PERKINS; WEI XU; ECO AGRO RESOURCES LLC; VASTO CHEMICAL COMPANY, INC.; and KADI RESOURCES LLC, | ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

The Memorandum Opinion and Recommendation of the United States Magistrate Judge ("Recommendation") [Doc. #64] was filed with the Court in accordance with 28 U.S.C. § 636(b) and, on February 18, 2016, was served on the parties [Doc. #65]. Third-Party Defendants Gary David McKnight, Raymond P. Perkins, Wei Xu, Eco Agro Resources LLC ("Eco Agro"), Vasto Chemical Company, Inc. ("Vasto"), and Kadi Resources LLC ("Kadi") (collectively "Third-Party Defendants") and Third-Party Plaintiff Shangyu Sunfit Chemical Company, Ltd. ("Sunfit") filed timely objections to the Recommendation. [Docs. #66, 67; see also Doc. #68.] Pursuant to 28 U.S.C. § 636(b)(1), the Court has appropriately reviewed the portions of the Recommendation to which objections were made and has made a de novo determination to adopt in part the Recommendation.

Third-Party Defendants have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Sunfit's two claims against them – a violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") and a violation of North Carolina's Uniform Fraudulent Transfer Act ("UFTA")[1]. (Mot. to Dismiss Third Party Compl. ("Motion to Dismiss") [Doc. #55].) The Magistrate Judge recommends denying the motion as to the UDTPA claim and the UFTA claim

---

[1] Effective October 1, 2015, North Carolina's UFTA is referred to as the Uniform Voidable Transactions Act. Because Sunfit alleges that the transfers were made prior to the effective date of the Act's amendment, the Court will refer to the previous version of the Act, as have the parties. See DWC3, Inc. v. Kissell, 784 S.E.2d 237 (Table), 2016 WL 1006133, at *5 n. 1 (N.C. Ct. App. Mar. 15, 2016).

2

based on actual fraud, but recommends granting the motion as to the UFTA claim based on constructive fraud. The Magistrate Judge also recommends denying Sunfit's request for leave to amend its Amended Third-Party Complaint. The Recommendation is adopted in so far as it recommends denying the motion to dismiss the UDTPA claim, granting the motion to dismiss the claim of constructive fraudulent transfers, and denying Sunfit's request for leave to amend its Amended Third-Party Complaint. The Recommendation is not adopted insofar as it recommends denying the motion to dismiss the claim of actual fraudulent transfers.

I.

For purposes of the Motion to Dismiss, the well-pled facts in the Amended Third-Party Complaint[2] are taken as true. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). On September 29, 2011, Hongda Chem USA, LLC ("Hongda") and Sunfit entered into a Sales Contract[3] according to which Sunfit agreed to produce N-(n-Butyl) thiophosphoric Triamide ("NBPT") exclusively for sale by Hongda in North America, and Hongda agreed to buy and sell NBPT only from Sunfit. (See Sales Contract.)

---

[2] The factual allegations of the counterclaims serve, in large measure, as the factual allegations for the Amended Third-Party Complaint. (See Am. Third-Party Compl. ¶¶ 6, 17, 18, 24, 25, 26 [Doc. #51].)
[3] Sunfit signed the contract on September 23, 2011, followed by Hongda on September 29, 2011. (Second Am. Countercls. & Am. Third-Party Compl. Ex. 1 (Sales Contract) [Doc. #51-1].)

3

However, prior to the contract's execution, Hongda, McKnight (President and Chief Executive Officer of Hongda and managing member of Third-Party Defendant entities), Perkins (Officer of Hongda and managing member of Eco Agro), Xu (Officer of Hongda), Vasto, and Kadi conspired to create a competing venture.[4] (Second Am. Countercls. ¶ 37.) They decided to create a new entity or entities through which they would manufacture NBPT in China, then ship it to the United States, and sell it through such entities. (Id. ¶ 38.) On September 21, 2011, Perkins e-mailed McKnight and Xu after learning that Sunfit wanted to add to the draft contract the requirement that Hongda purchase NBPT for sale in North America solely from Sunfit. (Id. ¶ 40.) In other words, Sunfit wanted the exclusivity provision in the contract to be reciprocal. (Id.) Perkins emphatically suggested to McKnight and Xu that someone had leaked their secret plans. (Id.) Nevertheless, with Third-Party Defendants having conspired to create a venture to manufacture and sell NBPT in competition with Sunfit, McKnight entered into the contract with Sunfit on behalf of Hongda and agreed to the reciprocal exclusivity provision. (See Sales Contract.)

Hongda and Third-Party Defendants also devised a scheme whereby they would induce Sunfit to manufacture and ship NBPT to Hongda which would sell it

---

[4] Although Eco Agro is a Third-Party Defendant and Third-Party Defendants are alleged to have conspired together and with Hongda prior to the execution of the contract, Eco Agro was not established until December 31, 2012 and, therefore, could not have conspired to do anything prior to that date. (See Second Am. Countercls. ¶ 44.)

and, rather than pay Sunfit according to the contract terms, Hongda and Third-Party Defendants would transfer the sale proceeds from Hongda and invest them into their scheme, using Sunfit's money to build Hongda's and Third-Party Defendants' new, competing distribution system. (Second Am. Countercls. ¶ 41.) In furtherance of this scheme, Hongda repeatedly requested additional deliveries of NBPT from Sunfit, knew that it had no intention of remitting the sale proceeds to Sunfit, subsequently refused to remit payment to Sunfit, and, instead, used the proceeds to create a competing venture. (Id. ¶ 42.) When Sunfit questioned Hongda about its failure to remit payment, Hongda representatives falsely stated that Hongda had no funds to remit because it had not been paid by the ultimate customer, Albemarle Corporation ("Albemarle"), and admitted to the truth only after Albemarle had confirmed having made the payments. (Id. ¶¶ 16-18.)

In support of these allegations, Sunfit attached copies of sixteen Purchase Orders from Hongda to Sunfit and corresponding Commercial Invoices from Sunfit to Hongda during a portion of the period that the contract was in effect. (Second Am. Countercls. & Am. Third-Party Compl. Ex. 2 (Purchase Orders from Hongda to Sunfit) [Doc. #51-2], Ex. 3 (Commercial Invoices from Sunfit to Hongda) [Doc. 51-3].) Sunfit alleges that Hongda was paid for the NBPT that Sunfit provided pursuant to these Purchase Orders and failed to remit payment to Sunfit as required by the contract. (Second Am. Countercls. ¶¶ 25-29.) Although Sunfit alleges that, as of August 2012, Hongda has been in default on its obligation to remit payment to Sunfit (e.g., id. ¶ 4), the dates of the Purchase Orders and

5

Commercial Invoices do not, on their face, correspond to a default date of August 2012, but they are evidence that Hongda requested that Sunfit manufacture and sell NBPT to Hongda and that Sunfit did so.

II.

Third-Party Defendants object to the Recommendation's conclusion that Sunfit sufficiently alleged that Third-Party Defendants' conduct was egregious enough to elevate the matter from a mere breach of contract to a violation of the UDTPA. (Third-Party Defs.' Objs. to the Magistrate Judge's Mem. Op. & Recommendation ("Third-Party Defs.' Objs.") at 13-15 [Doc. #66].) They argue that they were not parties to the contract underlying the instant action and that, even if they were conspiring to cause Hongda to breach its contract with Sunfit and create a competing business, North Carolina courts do not recognize those actions as unfair or deceptive. (Id. at 15-17.)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). However, when a complaint states facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id. (quoting Twombly, 550 U.S. at 557).

6

When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in his favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557.

To state a claim for a violation of North Carolina's UDTPA, North Carolina General Statute § 75-1.1, a plaintiff must show that "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Id.; see also Branch Banking & Trust Co. v. Thompson, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992) (describing an unfair trade practice as "immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers"). "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain" a claim under the UDTPA, though. Branch Banking & Trust Co., 418 S.E.2d at 700. "[A] plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act[.]" Id. In addition, "[p]roof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts." Bhatti v. Buckland, 400 S.E.2d 440, 442 (N.C. 1991). "[T]he essential

7

elements of actionable fraud are . . . (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injur[ed] party." Ragsdale v. Kennedy, 209 S.E.2d 494, 500 (N.C. 1974).

Furthermore, while there is no independent cause of action for civil conspiracy under North Carolina law, a claim for conspiracy can arise from an underlying claim for unlawful conduct. Byrd v. Hopson, 265 F. Supp. 2d 594, 599 (W.D.N.C. 2003), aff'd in part & rev'd in part on other grounds, 108 F. App'x. 749 (4th Cir. 2004) (citing Toomer v. Garrett, 574 S.E.2d 76 (N.C. Ct. App. 2002), appeal dismissed, 579 S.E.2d 576 (N.C. 2003)); see also Waldon v. Burris, No. 3:04-CV-00050, 2007 WL 2300793, at *2 (W.D.N.C. Aug. 7, 2007) ("Under North Carolina law, a conspiracy to defraud claim must be based on an underlying fraud."). A civil conspiracy is "an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way." Muse v. Morrison, 66 S.E.2d 783, 784 (N.C. 1951). However, "[a]n allegation that a corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with itself", which it cannot do because a conspiracy requires the presence of at least two people. State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 646 S.E.2d 790, 799 (N.C. Ct. App. 2007), aff'd in part & rev'd in part on other grounds, 666 S.E.2d 107 (N.C. 2008) (describing this as the doctrine of intracorporate immunity). While "the grant of [intracorporate] immunity is not destroyed by suing the agent in his individual capacity[,] . . . an exception to

8

the doctrine exists if the corporate agent has an independent personal stake in achieving the corporation's illegal objective." Id. "To create civil liability for conspiracy, a wrongful act resulting in injury to another must be done by one or more of the conspirators pursuant to the common scheme and in furtherance of the common scheme." Muse, 66 S.E.2d at 785.

Here, Third-Party Defendants are correct that, unlike Hongda, they are not parties to the contract with Sunfit. Nevertheless, the Magistrate Judge is correct in that the allegations against Third-Party Defendants are sufficient to state a claim for unfair or deceptive trade practices. First, read together, paragraphs thirty-seven through forty of the counterclaims plausibly allege that Third-Party Defendants (with the exception of Eco Agro) conspired to commit unfair or deceptive trade practices.[5] There was an agreement among Perkins, McKnight, and Xu, along with Third-Party Defendant entities and Hongda, to create a secret business venture bypassing Sunfit. Days after Perkins expressed in his email to McKnight and Xu his concern that someone had leaked their secret plans,

---

[5] Paragraph 39 of the counterclaims alleges conduct that took place after Hongda and Sunfit entered into their contract. A July 3, 2012 e-mail between Perkins and McKnight includes discussions about obtaining NBPT from manufacturers other than Sunfit and using Vasto to import and sell NBPT to Hongda which would then sell to its North American customers – all in violation of the contract's exclusivity provision. (Second Am. Counterls. ¶ 39.) Read alone, the timing of this conduct amounts to intentional breach of contract, which is insufficient to support a claim of unfair or deceptive trade practices. However, when read along with paragraphs thirty-seven, thirty-eight, and forty which describe conduct prior to the execution of the contract, it provides further support for the claim of a unfair or deceptive trade practices.

9

McKnight, on Hongda's behalf, entered into the contract with Sunfit, presumably aware of the first paragraph of the contract – the reciprocal exclusivity provision. In other words, McKnight entered into the contract on Hongda's behalf while neither he nor Honda had intention of honoring it. This alleged conduct was fraudulent in that McKnight concealed from Sunfit the material fact that Hongda had no intention of honoring the exclusivity provision in the contract, this concealment was reasonably calculated to and made with the intent to deceive Sunfit, and Sunfit was in fact deceived by entering into the sales contract and was damaged as a result. This fraudulent conduct serves as the predicate for a UDTPA claim. See, e.g., SAS Institute, Inc. v. World Programming Ltd., No. 5:10-25-FL, 2016 WL 3435196, at *3 (E.D.N.C. June 17, 2016) (explaining that the predicate for the plaintiff's UDTPA claim – fraudulent inducement – occurs when a promisor "ha[s] a specific intent not to perform a[t] the time the promise was made" and quoting Wilson v. McAleer, 368 F. Supp. 2d 472, 477 (M.D.N.C. 2005)).

Furthermore, Sunfit's allegations of Third-Party Defendants' (including Eco Agro's) conduct after Sunfit and Hongda had entered into the contract also state a claim for unfair or deceptive trade practices. Sunfit alleges that Hongda, a co-conspirator of Third-Party Defendants, induced Sunfit to manufacture and ship NBPT to Hongda which had no intention when ordering of remitting payment to Sunfit. Hongda then used the money owed to Sunfit to invest in a new venture with Third-Party Defendants that would compete with Sunfit. In addition, Hongda misrepresented to Sunfit that it was not remitting payments because Albemarle

10

failed to pay when in fact Hongda had been paid. This alleged conduct is not only unscrupulous, unethical, and has the capacity to deceive, but it is fraudulent. Any of those characterized actions would violate the UDTPA.

Although the allegations against each Third-Party Defendant are not equally detailed, the allegations against each Third-Party Defendant are sufficient because Third-Party Defendants are alleged to have conspired with each other and Hongda to commit these acts and, at the very least, McKnight and Hongda are alleged to have acted in furtherance of the common scheme which caused injury to Sunfit. While it is determined that Sunfit has sufficiently alleged a claim of unfair or deceptive trade practices against Third-Party Defendants, the parties will need to be more precise as the case progresses with respect to the conspiracy allegations. (See supra § II (discussing intracorporate immunity).)

III.

Third-Party Defendants also object to the Recommendation's use of a relaxed pleading standard for the UFTA claim based on actual fraud. (Third-Party Defs.' Obs. at 9-13.) They argue that the principle on which the Recommendation bases its application of the relaxed pleading standard – that certain information required to be pled is wholly within Third-Party Defendants' knowledge – "is of questionable validity in civil matters" outside of the bankruptcy context. (Id. at 10-11 (citing, as does the Recommendation, In re Whitley, No. 10-10426, 2013 WL 486782 (Bankr. M.D.N.C. Feb. 7, 2013).) They also argue that the

11

Recommendation goes beyond relaxing the standard and "completely eliminate[s] the particularity requirement." (Id. at 11-13.)

Under the UFTA, a debtor commits an actual fraudulent transfer when he makes the transfer "[w]ith the intent to hinder, delay, or defraud any creditor of the debtor[.]" N.C. Gen. Stat. § 39-23.4(a)(1); see also id. § 39-23.4(b) (providing factors to consider when determining intent). In addition to meeting the plausibility pleading standard, a plaintiff who alleges that a defendant committed actual fraud when he made the suspect transfer must also meet Rule 9(b)'s heightened pleading standard and "state with particularity the circumstances constituting fraud". Thimbler, Inc. v. Unique Sols. Design, Ltd., No. 5:12-CV-695-BR, 2013 WL 4854514, at *7 (E.D.N.C. Sept. 11, 2013) ("To set forth a claim for actual fraudulent transfers, Thimbler must state with specificity the factual circumstances constituting the alleged fraud."). Typically, Rule 9(b) requires a plaintiff to allege "the time, place, and contents" of the fraudulent conduct, including the identity of the person and "what he obtained thereby." Weidman v. Exxon Mobil Corp., 776 F.3d 214, 219 (4th Cir. 2015), cert. denied, ___ U.S. ___, 135 S. Ct. 2868 (2015). In the context of actual fraudulent transfers, "the complaint must allege (1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfers and (3) the consideration paid with respect thereto." In re Whitley, Adversary No. 12-02028, 2013 WL 486782, at *13 (Bankr. M.D.N.C. Feb. 7, 2013) (analyzing a claim for actual fraudulent transfer under the Bankruptcy Code after noting that "North Carolina's fraudulent transfer statute is similar in form and

12

substance to the Bankruptcy Code's fraudulent transfer provisions" and comparing 11 U.S.C. § 548(a)(1)(a) with N.C. Gen. Stat. § 39-23.4, 2013 WL 486782, at *12).

In some cases, there is a tension between Rule 9(b)'s particularity pleading standard for fraud claims, the purpose of the standard, and the information that is realistically accessible to a plaintiff when preparing the complaint. The purposes of Rule 9(b)'s particularity requirement are to ensure that the defendant is on notice of the alleged fraudulent conduct, to protect the defendant from a frivolous suit, to protect a defendant's goodwill and reputation, and to eliminate fraud actions where all the facts are learned after discovery. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Therefore, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Id. cited in Smith v. Clark/Smoot/Russell, 796 F.3d 424, 432 (4th Cir. 2015).

While the Fourth Circuit has apparently not done so, some courts relax the particularity requirement "when a plaintiff alleges facts particularly within the knowledge of the defendant." In re Whitley, 2013 WL 486782, at *13. For example, in bankruptcy cases, because a trustee bringing a fraudulent transfer claim initially has only second-hand knowledge to use to allege a claim for fraud, Rule 9(b)'s standard may be relaxed. Id. (finding that the trustee's allegations met

13

the relaxed standard because the defendant was "not left to guess about which among a number of deposits/transfers [were] at issue because the complaint informs [it] that all of the deposits that went into the Debtor's checking account during the specified time period [of March 2008 to March 2010] [were] being challenged as fraudulent transfers"). Outside of the bankruptcy context, courts have relaxed the pleading standard for claims of fraudulent concealment or omission because, in such cases, a plaintiff would not be able to specify the time, place, and specific content of the concealment or omission as particularly as a plaintiff alleging fraudulent representation. See Schwartz v. Pella Corp., Nos. 2:14-mn-000001-DCN, 2:14-cv-00556-DCN , 2014 WL 7264948, at *6 (D.S.C. Dec. 18, 2014) (citing district courts within and outside of the Fourth Circuit in support of applying a relaxed standard to the plaintiff's claim of fraudulent concealment but noting that "the Fourth Circuit has not adopted this relaxed Rule 9(b) standard"). But see U.S. ex rel. Nathan v. Takeda Pharm. N.A., Inc., 707 F.3d 451, 456 (4th Cir. 2013) (recognizing the purposes of Rule 9(b), particularly in a False Claims Act case, and refusing to apply a relaxed pleading standard because "nothing in the Act or in our customary application of Rule 9(b) suggests that a more relaxed pleading standard is appropriate in this case"); Thimbler, Inc., 2013 WL 4854514 (applying Rule 9(b)'s heightened pleading standard to a claim of actual fraudulent transfers).

Outside of the Fourth Circuit, circuit courts of appeals have "consider[ed] whether any [Rule 9(b)] pleading deficiencies resulted from the plaintiff's inability

14

to obtain information in the defendant's exclusive control" and relaxed the pleading standard as long as the plaintiff alleges facts that make the legal theory of fraud plausible. See, e.g., George v. Urban Settlement Servs., No. 14-1427, 2016 WL 4272377, at *9 (10th Cir. Aug. 15, 2016) (citing cases from the Tenth, Seventh, and Third Circuits, applying a relaxed standard to the plaintiff's racketeering claim against one defendant whose identity was kept secret as part of the scheme, and finding that the plaintiff "sufficiently apprised Urban of its alleged role in the overall scheme to defraud borrowers and of its involvement in the alleged predicate acts of mail and wire fraud").

Here, Sunfit alleges that Hongda and Third-Party Defendants (alleged to be insiders or corporate affiliates of Hongda) conspired to improperly retain fraudulently transferred funds belonging to Sunfit. (Second Am. Countercls. ¶¶ 37, 55.) During contract negotiations, Hongda intended to retain the proceeds from the sale of NBPT owed to Sunfit and use the proceeds to fund a new business venture and the then-to-be-formed affiliate Eco Agro so that Hongda and Eco Agro could source NBPT from a manufacturer other than Sunfit and sell it in North America for substantially higher margins than under the contract with Sunfit.[6] (Id. ¶¶ 56, 57.) "On information and belief," "a portion" of the sale proceeds that were to be remitted to Sunfit were used to finance the establishment of a new

---

[6] As previously noted, Sunfit also alleges that Perkins and McKnight were discussing using Vasto to import and sell NBPT. (See Second Am. Countercls. ¶ 39.)

15

manufacturer of NBPT, "some" were taken by McKnight and Xu, and "some" were paid to Eco Agro, Vasto, and Kadi. (Id. ¶ 58; see also Am. Third-Party Compl. ¶ 2 (alleging that Third-Party Defendants "in many cases" were recipients of the fraudulent transfers).) As Sunfit concedes, the remainder of Sunfit's allegations "track[] all of the statutory language" concerning Hongda's financial status at the relevant times. (See Third-Party Pl.'s Br. in Opp'n to Third-Party Defs.' Mot to Dismiss ("Third-Party Pl.'s Br. in Opp'n") at 19 [Doc. #58]; Shangyu Sunfit Chemical Company, Ltd.'s Objs. to the Magistrate Judge's Mem. Op. & Recommendation ("Sunfit's Objs.") at 3 [Doc. #67]; Second Am. Countercls. ¶¶ 60-62, 65.)

While these allegations may plausibly allege that Third-Party Defendants conspired to make actual fraudulent transfers, the allegations do not meet Rule 9(b)'s heightened pleading standard, even if the Court were to apply a relaxed Rule 9(b) standard. For example, unlike the allegations in In re Whitley that informed the defendant that all of the deposits into one particular bank account made between March 2008 and March 2010 were being challenged as fraudulent, there is simply not enough information alleged here to inform Third-Party Defendants likewise. Although Sunfit alleges that Hongda has not made any payments to Sunfit since August 2012, it does not allege if this is the date that the fraudulent transfers began nor does it allege the date when the fraudulent transfers ended. During this unspecified period of time, "some" money went to McKnight and Xu, while "some" money went to Third-Party Defendant entities, while yet another

16

"portion" was used to finance a Chinese manufacturer. These allegations do not make Third-Party Defendants aware of the particular circumstances for which they will have to prepare a defense nor does it appear that Sunfit has substantial pre-discovery evidence of facts in support of these allegations. Therefore, Sunfit's allegations of actual fraudulent transfer are dismissed, but without prejudice, see infra § V.

IV.

Next, Sunfit objects to the Recommendation's conclusion that the allegations of constructive fraudulent transfers are insufficient. (Sunfit's Objs. at 3.) Sunfit argues, as noted above, that its allegations "track the elements of the claim alleged", explains that the missing details are currently only known to Third-Party Defendants, and then concedes that its allegations are conclusory. (Id.)

In addition to providing for claims of actual fraud, the UFTA also provides for claims of constructive fraud. "Constructively fraudulent transfers, in contrast to those based on actual fraud, focus on the effect the transfer had on the debtor's financial condition without regard for the debtor's state of mind or intentions." Thimbler, Inc., 2013 WL 4854514, at *8 (quoting In re Roszkowski, 494 B.R. 671, 678 (Bankr. E.D.N.C. 2013)). Also unlike a claim for actual fraud, a claim for constructive fraud is not required to meet Rule 9(b)'s heightened pleading standard, but must, nevertheless, meet Rule 8's plausibility standard. In re Caremerica, Inc., 409 B.R. 737, 755 (Bankr. E.D.N.C. 2009); (see supra § II (discussing the pleading standard to survive a Rule 12(b)(6) motion)).

17

A transfer is constructively fraudulent if the transfer is made

> [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: a. [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or b. [i]ntended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.C. Gen. Stat. § 39-23.4(a)(2) (applies "whether the creditor's claim arose before or after the transfer was made"). A transfer is also considered constructively fraudulent if the transfer is made "without receiving a reasonably equivalent value in exchange for the transfer . . . , and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer . . . ." Id. § 39-23.5 (applies when a creditor's claim arose before the transfer was made).

Here, as Sunfit concedes, its allegations of constructive fraudulent transfers merely track the elements of the statute. (See Second Am. Countercls. ¶¶ 60-62, 65.) As the Magistrate Judge aptly stated, "Sunfit failed to plead facts regarding Hongda's financial condition to allow the Court to draw reasonable inferences that Hongda was insolvent or that its remaining assets were unreasonably small in relation to the transaction." (Recommendation at 16.) Therefore, Sunfit's claims of constructive fraudulent transfers are dismissed, but without prejudice, see infra § V.

V.

Sunfit also objects to the denial of its request for leave to amend its Amended Third-Party Complaint. (Sunfit's Objs. at 4-5.) In its response in

opposition to the Motion to Dismiss, Sunfit sought leave to amend its Amended Third-Party Complaint should the Court grant the Motion to Dismiss (Third-Party Pl.'s Br. in Opp'n at 20-21), which the Magistrate Judge recommended denying. The Magistrate Judge explained that Sunfit neither filed a motion for leave to amend nor attached a proposed amended complaint. (Recommendation at 16.)

Local Rule 7.3(a) requires that each motion be set out in a separate pleading. Although pursuant to Local Rule 7.3(j), a brief is not required in support of a motion to amend the pleadings, the motion must state good cause, cite any applicable rule, statute, or other authority justifying the relief sought, and be accompanied by a proposed order. Local Rule 15.1 specifically requires that a motion for leave to amend a pleading be accompanied by a proposed amended pleading.

Sunfit requested in its brief in opposition to the Motion to Dismiss leave to amend its Amended Third-Party Complaint. Although Sunfit cited case law in support of the appropriateness of granting leave, it followed none of the other requirements of the Local Rules. Therefore, Sunfit's request for leave to amend is denied in its present form. However, should additional evidence which supports Sunfit's claims be discovered, Sunfit may move for leave to amend the Amended Third-Party Complaint, making sure to follow the Local Rules, including those that may be applicable if relevant deadlines have passed.

19

VI.

Finally, the Court is concerned over tactics employed by representatives of several parties in this case, including arguments <u>ad hominem</u> and threats to file motions for sanctions, but feels this is not the occasion to undertake further inquiry about that conduct.  It is mentioned now for the purpose of advising the parties that they should carefully reflect on assertions which bring into question the character of opposing counsel as they move further in this case and that may be instructive with respect to actions the Court takes concerning conduct which has already transpired.

VII.

For the reasons stated herein, IT IS HEREBY ORDERED that the Memorandum Opinion and Recommendation of the United States Magistrate Judge [Doc. #64] is ADOPTED IN PART and that Third-Party Defendants' Motion to Dismiss Third-Party Complaint [Doc. #55] is DENIED IN PART AND GRANTED IN PART.  The Motion to Dismiss is denied as to Sunfit's claim of a violation of the Unfair and Deceptive Trade Practices Act and granted as to Sunfit's claim of a violation of the Uniform Fraudulent Transfer Act, which is dismissed without prejudice.  Further, Sunfit's request for leave to amend the Amended Third-Party Complaint is denied without prejudice.

This the 8th day of September, 2016.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge