# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HONGDA CHEMICAL USA, LLC, et al., )
)
          Plaintiffs, )
)
v. )
)
SHANGYU SUNFIT CHEMICAL )
COMPANY, LTD., et al., )     1:12CV1146
)
          Defendants/Third-Party )
          Plaintiff, )
)
v. )
)
GARY DAVID MCKNIGHT, et al., )
)
          Third-Party Defendants. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court upon several dispositive motions: Defendant YMS Agriculture International Corporation's ("YMS") motion for summary judgment (Docket Entry 129), Plaintiffs Hongda Chem USA, LLC ("Hongda Chem") and Hongda Group Limited, LLC's ("Hongda Group") (collectively "Hongda") motions for partial summary judgment (Docket Entries 143, 145), Third-Party Defendants Eco Agro Resources, LLC ("Eco Agro"), KaDi Resources, LLC ("KaDi"), Vasto Chemical Company, Inc. ("Vasto"), Gary David McKnight, Raymond P. Perkins, and Wei Xu's (collectively "Third Party Defendants") motions for summary judgment (Docket Entries 131, 133, 135, 137, 139, 141), and Defendant Shangyu Sunfit Chemical Company, Ltd.'s ("Sunfit") motion for partial summary judgment (Docket Entry 149). All motions are ripe for disposition.

## I.  BACKGROUND

This action arises from a contractual dispute regarding the sale of a chemical ingredient that enhances the performance of fertilizers.  On September 29, 2011, Hongda and Sunfit entered into a 5-year contract ("the Agreement") according to which Sunfit agreed to produce N-(n-Butyl) thiophosphoric Triamide ("NBPT") exclusively for sale by Hongda in North America, and Hongda agreed to buy and sell NBPT only from Sunfit.[1]  (*See* Sales Agreement, Docket Entry 37-1.)  Paragraph 4 of the Agreement provides:

> No material shall be sold in North America (USA and Canada)
> by Sunfit directly or [through] other representatives than Hongda
> Chem USA during the time frame this agreement is in effect.

(*Id.* ¶ 4.)  According to the First Amended Complaint, Hongda purchased a significant amount of NBPT from Sunfit, and entered into a contract to sell NBPT to a client, Albemarle Corporation ("Albemarle"), in reliance on the Hongda-Sunfit Agreement.  (First Am. Compl. ¶ 23, Docket Entry 37.)  Hongda alleges that prior to entering into the Agreement, Sunfit created YMS in March 2011 to sell NBPT in North America.  (*Id.* ¶ 24.)  Sunfit eventually passed a shareholders resolution authorizing the sale of NBPT through YMS to North American buyers.  (*Id.* ¶ 25.)  As such, Hongda alleges that, while negotiating the Agreement, Sunfit "misrepresented its sales activities in North America and also misrepresented its intentions to use Hongda as its exclusive distributor of NBPT."  (*Id.* ¶ 26.)

Hongda further alleges that YMS had knowledge of, and intentionally interfered with, the Agreement, acting as Sunfit's vehicle for selling its NBPT product to purchasers in North

---

[1] Sunfit signed the contract on September 23, 2011, followed by Hongda on September 29, 2011. (*See* Ex. 1, Sales Contract, Docket Entry 37-1.)

America. (*Id.* ¶¶ 27-31.) For example, in January 2012, YMS representatives approached the U.S.-based company Agrium Advanced Technologies, Inc. ("Agrium") to sell NBPT to Agrium. (*Id.* ¶ 32.) Hongda alleges that YMS representatives told Agrium that YMS was formed by Sunfit to sell NBPT in North America, and arranged for Agrium's representatives to view Sunfit's facility in China. (*Id.* ¶¶ 33-34.) During this time, YMS falsely represented to Agrium that the Hongda-Sunfit Agreement did not apply to sales to Agrium, and also told Agrium that Hongda failed to pay its bills on time. (*Id.* ¶¶ 35-36.) YMS subsequently sold NBPT to Agrium and other customers in North America. (*Id.* ¶¶ 37-38.)

As a result, Hongda alleges that it has suffered direct sales losses and future business opportunities, totaling an excess of $10,000,000. (*Id.* ¶ 40.) Hongda asserts six causes of action in this matter: (1) a declaratory judgment as to the rights and obligations of Hongda and Sunfit; (2) a breach of contract claim against Sunfit; (3) a claim for intentional interference with a contractual relationship against Sunfit; (4) a claim for intentional interference with a contractual relationship against YMS; (5) a claim for fraud against Sunfit; and (6) a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") against Sunfit and YMS. (*Id.* ¶¶ 41-89.)

Sunfit filed an Answer and also asserted counterclaims in this action. (Second Am. Countercls. & Third-Party Compl., Docket Entry 51.) According to Sunfit, Hongda has defaulted in the payment of material sums under the Agreement. (Second Am. Countercls. ¶ 4.) Sunfit states that it questioned Hongda about the failed payments, and Hongda representatives falsely misrepresented that it had no funds with which to pay because it was not receiving payment from its client, Albemarle. (*Id.* ¶ 16.) Sunfit thereafter contacted

Albemarle and discovered that Albemarle was remitting timely payments to Hongda. (*Id.* ¶ 17.) When approached by Sunfit, Hongda falsely asserted that Sunfit was attempting to make a direct sale to Albemarle in violation of the Agreement. (*Id.* ¶ 18.) Sunfit eventually sent a final demand for all delinquent payments and threatened to terminate the Agreement if Hongda failed to pay the monies owed by October 26, 2012. (*Id.* ¶ 20.) In response, Hongda ignored the demand and filed the pending lawsuit. (*Id.*)

Sunfit also alleges that, prior to execution of the Agreement, Hongda and its principals, McKnight (President and Chief Executive Officer of Hongda and managing member of Third-Party Defendant entities), Perkins (Officer of Hongda and managing member of Eco Agro), Xu (Officer of Hongda), in conjunction with several corporate entities including Eco Agro, Vasto, and KaDi, conspired to create a competing venture. (*Id.* ¶ 37.) They decided to create a new entity or entities through which they would manufacture NBPT in China, then ship it to the United States, and sell it through such entities. (*Id.* ¶ 38.) On September 21, 2011, Perkins e-mailed McKnight and Xu after learning that Sunfit wanted to add to the draft contract the requirement that Hongda purchase NBPT for sale in North America solely from Sunfit. (*Id.* ¶ 40.) In other words, Sunfit wanted the exclusivity provision in the contract to be reciprocal. (*Id.*) Perkins emphatically suggested to McKnight and Xu that someone had leaked their secret plans. (*Id.*) Nevertheless, with Third-Party Defendants having conspired to create a venture to manufacture and sell NBPT in competition with Sunfit, McKnight entered into the Agreement with Sunfit on behalf of Hongda and agreed to the reciprocal exclusivity provision. (*See* Sales Agreement ¶ 4.)

Sunfit further asserts that Hongda and Third-Party Defendants also devised a scheme whereby they would induce Sunfit to manufacture and ship NBPT to Hongda which would sell it and, rather than pay Sunfit according to the contract terms, Hongda and Third-Party Defendants would transfer the sale proceeds from Hongda and invest them into their scheme, using Sunfit's money to build Hongda and Third-Party Defendants' new, competing distribution system. (Second Am. Countercls. ¶ 41.) In furtherance of this scheme, Hongda repeatedly requested additional deliveries of NBPT from Sunfit, knew that it had no intention of remitting the sale proceeds to Sunfit, subsequently refused to remit payment to Sunfit, and, instead, used the proceeds to create a competing venture. (*Id.* ¶ 42.) In its counterclaims, Sunfit asserts several causes of action: (1) a breach of contract claim for Hongda's failure to remit payment for sixteen invoices in excess of $5,000,000; (2) a claim for conversion; (3) a claim under the UDTPA; (4) a claim in *quantum meruit* for the reasonable value of goods provided by Sunfit for which it has not been paid; and (5) and claim under the Uniform Fraudulent Transfer Act ("UFTA"). (*Id.* ¶¶ 12-66.)

Additionally, Sunfit filed a Third-Party Complaint against McKnight, Perkins, Xu, Eco Agro, Vasto and KaDi. (Am. Third-Party Compl., Docket Entry 51.) The factual allegations of the counterclaims serve, in large measure, as the factual allegations for the Amended Third-Party Complaint. (*See id.* ¶¶ 6, 17, 18, 24, 25, 26.) The Third-Party Complaint seeks two causes of action against Third-Party Defendants: (1) a UDTPA claim; and (2) a UFTA claim.[2] (*Id.* ¶¶ 16-27.)

---

[2] Sunfit's UFTA claim against Third-Party Defendants was dismissed without prejudice. (*See* Docket Entry 73.)

## II. DISCUSSION

All parties have moved for summary judgment on several issues in this matter. (Docket Entries 129, 131, 133, 135, 137, 139, 141, 143, 145, 149.) Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-

serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson,* 477 U.S. at 248-49. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

## A. Sunfit's Motion for Partial Summary Judgment/Hongda's Motion for Partial Summary Judgment

Sunfit moves for partial summary judgment on all claims against it as alleged in Hongda's First Amended Complaint, and further moves for summary judgment on its first counterclaim against Hongda for breach of contract. (Docket Entry 149.) Hongda seeks judgment in its favors as it relates to its breach of contract claim in its First Amended Complaint. (Docket Entry 145.) The parties have submitted a voluminous amount of evidence in support of the facts that are relevant to their accompanying motions. By joint stipulation, the parties agree to limited facts: (1) the identity of the parties; (2) the terms of the Agreement; (3) Hongda confronting Sunfit in March 2012 regarding NBPT sales in North America which Sunfit denied; (4) Sunfit's May 2012 notice indicating that it would no longer ship NBPT to Hongda unless it paid past due amounts; (5) Sunfit stopping shipment of NBPT to Hongda in the summer of 2012; (6) Hongda's payments to Sunfit totaling approximately $3.6 million dollars between July and August 2012; (7) Sunfit's demand letter for all outstanding amounts on October 22, 2012; and (8) the filing of this lawsuit. (Docket Entry 198.) Many facts remaining are in dispute and the parties' positions are set forth herein.

Sunfit asserts that, almost immediately after execution of the Agreement, Hongda began breaching the Agreement by failing to make payments on a timely basis. Sunfit, created by Weihang Wang ("Mr. Wang") and Ju Jin Wang ("Mrs. Wang")[3], was forced to make repeated demands for payment in late-2011 and throughout 2012 until Sunfit was ultimately forced to terminate its relationship with Hongda on October 26, 2012 after communicating that it could no longer afford to purchase the raw materials to manufacture NBPT without timely payment from Hongda. (*See* W. Wang Decl. ¶¶ 19-20, Docket Entry 150-1; Xu Dep. 79:12-80:22, Docket Entry 150-10.) Xu informed Sunfit that the reason Hongda was not paying Sunfit was that Albemarle, Hongda's primary customer, was not making timely payments to Hongda. (W. Wang Decl. ¶ 21; Xu Dep. 113:6-114:5.) Mr. Wang eventually contacted Albemarle directly about this payment issue and discovered that Albemarle had been paying Hongda on a timely basis, and therefore, not the reason for Hongda's own payment delinquencies. (W. Wang Decl. ¶ 21.) Mr. Wang then confronted Hongda about this and their response was to accuse him of unfairly contacting Albemarle. (*Id.* ¶ 22.)

Outside of the initial contact, Mr. Wang had no additional contact with Albemarle, except for one instance, after communicating with Xu, to see if Sunfit could modify the arrangement so that Albemarle would pay Sunfit directly and pay Hongda its three percent commission directly after the accounts receivable reached approximately $9 million dollars. (*Id.* ¶ 24-25; Xu Dep. 131:9-132:7; 146:5-148:1.) After going back to Albemarle, it was Mr. Wang's understanding that Hongda, not Albemarle, was unwilling to agree to a direct payment

---

[3] Mr. Wang and Mrs. Wang are not related. (*See* Wang Decl. ¶ 2, Docket Entry 150-1.)

from Albemarle to Sunfit. (Wang Decl. ¶ 26.) Mr. Wang states that neither he, nor anyone from Sunfit, ever encouraged Albemarle to breach its contract with Hongda. (*Id.* ¶ 47.)

Contrary to Sunfit's position, Hongda asserts that the real breach occurred in this action when Sunfit orchestrated the sale of NBPT through YMS to Agrium. In March 2012, within several months of execution of the Agreement, Agrium visited Sunfit's plant in China. Mrs. Wang testified that she was aware that Matt Chen, YMS's owner, was meeting with a foreign company at the Sunfit plant, but that he kept the client's information confidential. (J. Wang Dep. 112:4-12, Docket Entry 146-2.) During the visit there was a lunch meeting, and at that time Mrs. Wang discovered that the client which Mr. Chen spoke of was a U.S. based company. (J. Wang Dep. 112:13-25.) During this same time in March, Perkins was in China meeting with Sunfit on behalf of Hongda. (W. Wang Dep. 98:18-99:22, Docket Entry 146-3.) He did not meet Mr. Wang at the Sunfit facility, but instead at a hotel. (*Id.*) A month later, Sunfit entered into an agency agreement with Mr. Chen. (J. Wang Dep. 113:10-15, Docket Entry 146-2; Corporation Agreement, Docket Entry 150-5.) The agency agreement permitted Mr. Chen to sell NBPT on behalf of Sunfit to a list of customers in Europe, but expressly prohibited any sales in North America. (W. Wang Decl. ¶ 43.)

The record reflects that a sale of Sunfit's NBPT to Agrium occurred on or about July 12, 2012. (Agrium Email, Docket Entry 146-6 at 2; Agrium Purchase Order, Docket Entry 146-6 at 3.) Mrs. Wang states that it was YMS, not Sunfit, that sold the NBPT to Agrium which Sunfit discovered after the pending lawsuit was filed. (J. Wang Dep. 116:4-14, Docket Entry 146-5.) Mrs. Wang further states that Sunfit did not sell the NBPT to YMS; it was Mr. Chen and YMS that orchestrated the entire sale to Agrium. (J. Wang Dep. 116:6-8, 21-23.)

Hongda takes issue with this assertion, particularly in light of the Agrium visit to Sunfit's facility in March 2012, and the fact that McKnight had confronted Mr. Wang and Mrs. Wang in March 2012 to ask them if they were supplying NBPT to North American customers through a Canadian company. (McKnight Dep. 57:15-58:8, Docket Entry 146-11.) Sunfit denied that it was selling NBPT to North American customers at that time. (*Id.*) This was also close in proximity to the time when Sunfit hosted Albemarle at the Sunfit plant. The May 14, 2012 summary notes from the meeting described Sunfit's relationship with Hongda as to having "worsened significantly" because of late payments, and that Sunfit would be willing to work directly with Albemarle and "find a way to terminate the relationship with Hongda." (Summary Notes, Docket Entry 146-4.)

Hongda also presents evidence to cast further light on the YMS-Sunfit relationship. During the term of the Hongda-Sunfit Agreement, Mr. Chen made representations to Agrium regarding the joint business relationship between YMS and Sunfit. He referred to Mrs. Wang as one of "our" shareholders and as "our" chairwoman. (Exhibit 7, Docket Entry 144-8). Sunfit states that a shareholders' meeting resolution authorizing Mr. Chen to act as an agent for Sunfit and listing him as a shareholder was forged, but Sunfit gives no explanation for how Sunfit's letterhead, company seal, or Mrs. Wang's signature ended up on this alleged forgery. (J. Wang Dep. 130:8-132:5, Docket Entry 144-28; Shareholders' Meeting Resolution, Docket Entry 144-12.) Even though Sunfit disputes the authenticity of the March 2012 shareholders' meeting resolution, following the termination of the Agreement with Hongda, Sunfit listed Mr. Chen as a shareholder on a publicly filed document, which Mrs. Wang stated was a mistake

as Mr. Chen's father should have been listed as the shareholder. (J. Wang Dep. 35:9-38:16, Docket Entry 157-6.)

1. Sunfit's Motion for Partial Summary Judgment

Hongda's First Cause of Action (Declaratory Judgment)

Sunfit moves for summary judgment as to Hongda's cause of action for a declaratory judgment. (Docket Entry 150 at 15-16.) The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Act gives the Court discretionary authority to decline issuing the judgment. *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998). The Court's discretion must take into account "considerations of federalism, efficiency, and comity." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594 (4th Cir. 2004). "[A] declaratory judgment is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (internal quotations and citations omitted). "Many courts have previously recognized that a declaratory judgment does not serve a useful purpose where that purpose is only to resolve an already-existing breach of contract claim." *Sprint Commc'ns Co., L.P. v. FairPoint Commc'ns, Inc.*, No. 3:16-CV-00820-GCM, 2017 WL 2919015, at *6 (W.D.N.C. July 7, 2017) (unpublished) (collecting cases).

Here, Sunfit argues that Hongda's cause of action seeking a declaratory judgment is duplicative of its breach of contract action. The Court agrees. Hongda seeks a judgment

declaring that (1) Sunfit's sale of NBPT to third parties in North America constitutes a material breach of the Agreement; and (2) Hongda is entitled to damages as a result of Sunfit's alleged breach. (*See* Am. Compl. ¶ 44.) The parties are no longer engaged in any contractual relationship and Hongda's request simply mirrors its breach of contract claim; thus, a declaratory judgment here serves no useful purpose. *See Sprint Commc'ns*, 2017 WL 2919015, at *6 (finding that particular "sections of the declaratory [judgment] seek the resolution of issues which must be resolved in the course of litigating [the plaintiff's] other claims"); *Nyhart v. PNC Bank, N.A.*, No. CV PX 15-2241, 2016 WL 6996744, at *3 (D. Md. Nov. 30, 2016) (unpublished) (granting summary judgment on the issue of declaratory relief because the plaintiffs sought declaration on whether the defendant breached the contract).

Hongda's reliance upon *Quorum Health Res., LLC v. Hugh Chatham Mem'l Hosp., Inc.*, 552 F. Supp. 2d 527, 529 (M.D.N.C. 2007), is misplaced. Unlike *Quorum Health*, the Court here is not seeking to determine the meaning of an ambiguous term in a contract, but rather the question of whether a breach occurred. Also, the Court finds that Hongda's reliance upon *Republic Servs., Inc. v. Texas Ecological Servs., Inc.*, 118 F. Supp. 2d 775, 777 (S.D. Tex. 2000) is unpersuasive. The court in *Texas Ecological* reiterates that "even if the declaratory [judgment] action does share the same operative factual and legal issues as some other cause of action, this is not reason alone to warrant summary judgment." *Id.* at 776. This Court is not suggesting that the declaratory relief sought be dismissed solely because it relates to the breach of contract action. Indeed, "[t]he coexistence of both claims for breach of contract and declaratory judgment does not necessarily moot the need for a declaratory judgment, but when the same party brings both claims to obtain essentially identical relief, the declaratory judgment

serves little useful purpose." *Wenzel v. Knight*, No. 3:14-CV-432, 2015 WL 3466863, at *3-4 (E.D. Va. June 1, 2015) (unpublished). Such is the case here. Thus, Sunfit's motion for summary judgment as to Hongda's first cause of action in the Amended Complaint should be granted.

Hongda's Second Cause of Action (Breach of Contract)

Sunfit and Hongda both move for summary judgment on Hongda's breach of contract claim. The parties do not dispute that any alleged breach of the Agreement is governed by North Carolina law. To establish liability for a breach of contract claim under North Carolina law, there must be (1) an existing valid contract and (2) breach of the terms of that contract. *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Neither party here disputes whether a valid contract existed. However, the crux of this case surrounds the ultimate determination of whether the Agreement was breached. Under North Carolina law, when one party materially breaches a bilateral contract, the non-breaching party is excused from further performance. *McClure Lumber Co. v. Helmsman Constr., Inc.*, 160 N.C. App. 190, 198, 585 S.E.2d 234, 239 (2003); *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 537, 551 S.E.2d 546, 555 (2001); *Coleman v. Shirlen,* 53 N.C. App. 573, 577-78, 281 S.E.2d 431, 434 (1981). "Whether a breach is material or immaterial is ordinarily a question of fact." *McClure Lumber*, 160 N.C. App. at 198, 585 S.E.2d at 239 (citation omitted). "Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." *State v. Philip Morris USA Inc.*, 363 N.C. 623, 631, 685 S.E.2d 85, 90 (2009) (citation omitted). Thus, "[i]f the plain language of a contract is clear, the intention of

the parties is inferred from the words of the contract." *Walton v. City of Raleigh,* 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) (citation omitted).

Here, Sunfit argues that the Court should find as a matter of law that it did not breach the Agreement because Sunfit had no knowledge of the one sale of NBPT to Agrium. (Docket Entry 150 at 17.) Hongda argues that Sunfit's *actual knowledge* is irrelevant and that Hongda only need to show that a breaching sale took place. (Docket Entry 166 at 13-14.) The evidence before the Court demonstrates that there is a genuine issue of material fact as to whether the sale of NBPT to Agrium was a breach of the Agreement. In order for the breach to occur, Sunfit would have had to sell directly, or through other representatives, NBPT to North American companies (outside of its sales to Hongda). A sale of NBPT to YMS, a Canadian corporation, would be a breach of the Agreement. The evidence shows that Agrium, who visited Sunfit's facility in March 2012, was the U.S. based company that ultimately purchased NBPT from YMS. Whether Sunfit sold the NBPT to YMS, or whether YMS was used as the vehicle to sell this NBPT to Agrium—both of which would have been a violation of the Agreement—is a question of fact for the jury. Mrs. Wang denies selling NBPT to Agrium, whether directly or through YMS. Mrs. Wang also denies selling NBPT to YMS. At the time of the sale to Agrium, there was an agency agreement between YMS and Sunfit which permitted Mr. Chen (YMS) to make sales in Europe and explicitly prohibited North American sales. All of these facts are material and create a genuine issue of material fact precluding summary judgment in favor of Sunfit.

Hongda's Third Cause of Action (Intentional Interference with Contractual Relationship)

Sunfit also moves for summary judgment on Hongda's claim for intentional interference with a contractual relationship. (Docket Entry 150 at 18-20.) To establish a claim for tortious interference with a contract, a party must show:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*White v. Cross Sales & Eng'g Co.*, 177 N.C. App. 765, 768–69, 629 S.E.2d 898, 901 (2006) (citing *United Labs., Inc. v. Kuykendall,* 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)). The determination of whether an actor's conduct is justified depends upon "the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor[,] and the contractual interests of the other party." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 220-21, 367 S.E.2d 647, 650 (1988). "Generally speaking, interference with [a] contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors." *Embree Const. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (citation omitted). With regards to malice,

> It is not enough . . . to show that a defendant acted with actual malice; the plaintiff must forecast evidence that the defendant acted with legal malice. [*Murphy v. McIntyre,* 69 N.C. App. 323, 317 S.E.2d 397 (1984)]. A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties. *Id.* at 328-29, 317 S.E.2d at 401.

*Varner v. Bryan*, 113 N.C. App. 697, 702, 440 S.E.2d 295, 298 (1994).

"Even if plaintiff shows that defendant acted with ill intentions, legal malice does not exist unless plaintiff can show that defendant had no legitimate business justification for the interference." *Griffin v. Holden*, 180 N.C. App. 129, 140, 636 S.E.2d 298, 306 (2006). As stated in *Carolina Overall Corp. v. E. Carolina Linen Supply, Inc.*,

> The theory of the doctrine which permits recovery for the tortious interference with a contract is that the right to the performance of a contract and to reap the profits therefrom are property rights which entitle each party to protection and to seek compensation by action in court for an injury to such contract.

8 N.C. App. 528, 531, 174 S.E.2d 659, 661 (1970).

In its Amended Complaint, Hongda alleges that it had a valid contract with Albemarle of which Sunfit was aware, and that Sunfit intentionally induced Albemarle not to perform under the contract without justification. (Am. Compl. ¶¶ 53-57.) Sunfit argues that Hongda cannot demonstrate that elements three, four, and five have not been established. (Docket Entry 150 at 19; Docket Entry 170 at 4-7.) Viewing the evidence in the light most favorable to Hongda, the Court concludes that Hongda cannot establish that Sunfit acted with no legitimate business purpose.

The parties don't dispute that there was a valid contract between Hongda and Albemarle. They also don't dispute that there was a private meeting between Albemarle and Sunfit representatives. In fact, a summary of the notes from the meeting dated May 14, 2012, have been provided by Hongda. (Ex. 6, Docket Entry 136-7.) Additionally, Hongda has submitted evidence showing Albemarle's revocation letter after Albemarle previously informed Hongda of its intent to renew the contract. (*See* Ex. G, Docket Entry 166-9.)

Hongda's own evidence demonstrates that Sunfit acted with a legitimate business purpose – to determine why it was not receiving timely payments from Hongda. Hongda's own representative, Xu, conceded that there was an issue with late payments, and further stated that Hongda made late payments because Albemarle was making untimely payments to Hongda. (*See* Xu Dep. 113:6-114:5, Docket Entry 150-10; Xu Dep. 97:24-98:10, Docket Entry 170-2.) Based upon the summary notes from the meeting between Albemarle and Sunfit representatives, Hongda argues that Sunfit wanted to do more than address the late payments as the summary stated that "Sunfit will find a way to terminate the relationship with Hongda," and "Sunfit wants to negotiate a 5-yr agreement with Alb[emarle] directly as soon as possible." (Ex. 6, Docket Entry 136-7 at 3.) However, a portion of the summary also discusses the issue of late payments from Hongda to Sunfit, and invites Albemarle representatives to meet for negotiation of an agreement, stating that "[t]he major driving force is the security for payment." (*Id.* at 2-3.) In light of the evidence presented, Hongda cannot show that Sunfit had "no legitimate business justification for the interference"; thus, the motion for summary judgment on this issue should be granted. *Griffin*, 180 N.C. App. at 140, 636 S.E.2d at 306; *see also Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 523, 586 S.E.2d 507, 510 (2003) (holding that the defendant's contract bid "was a legitimate business interest and indicates a non-malicious motive for their 'interference' with [plaintiff's] contract"); *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674, 541 S.E.2d 733, 738 (2001) (finding, on a motion

to dismiss, that "the complaint must admit of no motive for interference other than malice" to survive).[4]

<u>Hongda's Fifth Cause of Action (Fraud)</u>

Sunfit moves for summary judgment on Hongda's fraud claim. (Docket Entry 150 at 20-22.) Hongda alleges that Sunfit's misrepresentations regarding the exclusivity rights in the Agreement were intended to, and did in fact, deceive Hongda. (Am. Compl. ¶¶ 67-75.) Sunfit argues that Hongda has failed to allege fraud, and has also failed to provide evidence of fraud. (Docket Entry 150 at 22.) Hongda points to several facts to show that Sunfit acted with the intent to deceive: (1) inadvertent receipt of an ISF form showing a shipment of Sunfit's NBPT going to a different customer in Charleston, South Carolina shortly after entering the Agreement (Xu Dep. 118:9-25, Docket Entry 166-15); (2) Sunfit's denial of selling NBPT to other North American customers through a Canadian company (YMS) in March 2012 (McKnight Dep. 57:21-58:3, Docket Entry 146-11); (3) YMS's and Agrium visit to Sunfit's facility in China and introduction to Mrs. Wang (Wang Dep. 111:5-113:9, Docket Entry 146-

---

[4] In its reply brief, Sunfit asserts that Albemarle fully performed under its contract and Albemarle's decision not to exercise its option to enter into a new contract with Hongda "cannot be equated to a breach." (Docket Entry 170 at 4.) Because of the Court's findings of the issue of justification, it need not address this issue any further. However, the Court does note that actions for tortious interference with contractual relations are not limited to an actual contractual breach. North Carolina courts recognize tortious interference claims in instances where one induces a party not to renew a contract with another, *see Fitzgerald v. Wolf*, 40 N.C. App. 197, 199, 252 S.E.2d 523, 524 (1979) (citations omitted) (emphasis added) ("Under North Carolina law, a third party who induces one party to terminate or *fail to renew a contract* with another may be held liable for malicious interference with the party's contractual rights if the third party acts without justification."), and in instances of interference with prospective economic advantage, which "arises when a party interferes with a business relationship 'by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference[.]'" *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 701, 784 S.E.2d 457, 463 (2016) (internal quotations and citation omitted).

2); (4) Sunfit's refusal to meet with Hongda representatives at the Sunfit plant (Perkins Dec. ¶ 24, Docket Entry 166-2); (5) Sunfit's and YMS's sales agreement in April 2012 (YMS/Sunfit Sales Agreement, Docket Entry 144-21); and (6) the sale of Sunfit's NBPT to Agrium in July 2012.

Under North Carolina law, to prove fraud a plaintiff must show (1) a false representation or concealment of a material fact that is (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) which results in damages to the injured party. *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). "Additionally, reliance on alleged false representations must be reasonable." *State Properties, LLC v. Ray*, 155 N.C. App. 65, 72, 574 S.E.2d 180, 186 (2002) (citation omitted). "In recognition of the fundamental difference between tort and contract claims, and in order to keep open-ended tort damages from distorting contractual relations, North Carolina has recognized an 'independent tort' arising out of breach of contract only in 'carefully circumscribed' circumstances." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998) (citation omitted). However, "[t]he mere failure to carry out a promise in contract . . . does not support a tort action for fraud." *Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.*, 15 F.3d 327, 331 (4th Cir. 1994) (citing *Hoyle v. Bagby,* 253 N.C. 778, 117 S.E.2d 760, 762 (1961)).

Here, the evidence presented demonstrates that there is no genuine issue of material fact regarding Hongda's fraud claim. Hongda relies upon conduct that occurred *after* the parties entered the Agreement. Even if a reasonable jury concluded that such conduct demonstrates a breach of the exclusivity provision on the part of Sunfit, "mere unfulfilled

promises cannot be made the basis for an action of fraud." *Williams v. Williams*, 220 N.C. 806, 18 S.E.2d 364, 366 (1942) (citation omitted). Absent here is specific evidence of an intent to deceive during contract formation. "North Carolina case law holds that fraudulent intent 'must have existed in the defendant's mind at the time he made the promise which induced the plaintiff' to enter into the agreement." *McKinnon v. CV Indus., Inc.*, 213 N.C. App. 328, 339, 713 S.E.2d 495, 503 (2011) (citing *Hoyle,* 253 N.C. at 781, 117 S.E.2d at 762); *see also Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 229, 768 S.E.2d 582, 598 (2015) ("[Plaintiff] failed to present specific evidence that *at the time of contract formation* between [plaintiff] and defendants, defendants had no intention of carrying out its unfulfilled promise; an essential element for a successful fraud claim." (emphasis added)). Because the evidence demonstrates that there is no genuine issue of material fact regarding whether Sunfit acted with fraudulent intent at the time of contract formation, Sunfit's motion on this issue should be granted.

To the extent Hongda's claim is premised upon Sunfits' failure to disclose its relationship with YMS, this argument fails. In cases "alleging concealment or nondisclosure, [a plaintiff] must first show 'that all or some of the defendants had a duty to disclose material information to [them] as silence is fraudulent only when there is a duty to speak.'" *Pearson v. Gardere Wynne Sewell LLP*, 814 F. Supp. 2d 592, 605 (M.D.N.C. 2011) (citing *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 194 (M.D.N.C. 1997)); *see also Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (internal quotations and citations omitted) ("A claim for fraud may be based on an affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose.").

> A duty to disclose arises where: (1) 'a fiduciary relationship exists
> between the parties to the transaction'; (2) there is no fiduciary
> relationship and 'a party has taken affirmative steps to conceal
> material facts from the other'; and (3) there is no fiduciary
> relationship and 'one party has knowledge of a latent defect in
> the subject matter of the negotiations about which the other party
> is both ignorant and unable to discover through reasonable
> diligence.'

*Sidden v. Mailman*, 137 N.C. App. 669, 675, 529 S.E.2d 266, 270-71 (2000) (citing *Harton v. Harton*, 81 N.C. App. 295, 297-98, 344 S.E.2d 117, 119).[5]  Here, the facts fail to show that Sunfit had a duty to disclose its relationship with YMS to Hongda.   Again, the facts surrounding the fraud claim point solely to the underlying issue of whether a breach occurred. If, in fact Sunift did breach the Agreement by selling NBPT through YMS, Hongda's breach of contract claim will resolve that issue.  The evidence here does not establish an independent tort claim for fraud; thus, Sunfit's motion for summary judgment as to this claim should be granted.

Hongda's Sixth Cause of Action (UDTPA)

Hongda also seeks a claim against Sunfit under the UDTPA.  (Am. Compl. ¶¶ 76-89.) Sunfit moves for summary judgment on this issue, arguing that (1) Hongda's UDTPA claim is not separate and distinct from its breach of contract claim, and (2) there are no substantial aggravating circumstances to establish a UDTPA claim.  (Docket Entry 150 at 23-24.)  N.C. Gen. Stat. § 75-1.1(a) states: "Unfair methods of competition in or affecting commerce, and

---

[5]  The Court also notes that when both parties "are businesses or businessmen . . . North Carolina courts have been loath to impose an obligation of disclosure on commercial parties engaged in business negotiations." *Daniel Grp., Inc. v. Am. Sales & Mktg., Inc.*, No. 16 CVS 889, 2016 WL 7435995, at *9 (N.C. Super. Dec. 15, 2016) (unpublished) (collecting cases).

unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "[A]n action for unfair or deceptive acts or practices is a distinct action apart from fraud, breach of contract, or breach of warranty." *Bernard v. Cent. Carolina Truck Sales,* 68 N.C. App. 228, 232, 314 S.E.2d 582, 585, *rev. denied,* 311 N.C. 751, 321 S.E.2d 126 (1984). To state a prima facie UDTPA claim in North Carolina, a party must allege that "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp,* 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citation omitted); *see also South Atl. Ltd. P'ship of Tenn., L.P. v. Riese,* 284 F.3d 518, 535 (4th Cir. 2002). Whether an act is deemed unfair or deceptive is "a question of law for the court." *Dalton,* 353 N.C. at 656, 548 S.E.2d at 711 (citation omitted). An act or practice is unfair "if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive "if it has the capacity or tendency to deceive." *Ace Chem. Corp v. DSI Transp., Inc.,* 115 N.C App. 237, 247, 446 S.E.2d 100, 106 (1994) (internal citations and quotations omitted). A party must allege and prove egregious or aggravating circumstances to fall within N.C. Gen. Stat. § 75-1.1(a). *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC,* 845 F.3d 104, 109 (4th Cir. 2016); *Phelps Staffing, LLC v. C.T. Phelps, Inc.,* 740 S.E.2d 923, 928 (N.C. Ct. App. 2013). "A mere breach of contract, even if intentional, is not an unfair or deceptive act under Chapter 75." *Bob Timberlake Collection, Inc. v. Edwards,* 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006) (citing *Bartolomeo v. S.B. Thomas, Inc.,* 889 F.2d 530, 535 (4th Cir. 1989)).

Here, Hongda's UDTPA claim against Sunfit rises or falls on whether the evidence establishes egregious or substantial aggravating circumstances. The North Carolina Court of

Appeals has held that "[i]t is unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." *Southeastern Shelter Corp. v. BTU, Inc.,* 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002) (citations and quotations omitted). This Court acknowledges, however, that not all UDTPA claims arising in the course of contractual performance are precluded, particularly where there is circumstantial evidence of intentional deception or fraud. *See Poor,* 138 N.C. App. at 28, 530 S.E.2d at 845 ("Applicable aggravating circumstances include conduct of the breaching party that is deceptive."); *Mosley & Mosley Builders, Inc. v. Landin Ltd.,* 97 N.C. App. 511, 517, 389 S.E.2d 576, 579 (1990) (contractual breach accompanied by fraud or deception constitutes unfair or deceptive trade practice).

Considering the evidence in light most favorable to Hongda, the Court concludes that Hongda's UDTPA claim against Sunfit should be dismissed. The evidence fails to show egregious or aggravating circumstances such that any injury would be wholly distinct from any alleged breach of contract damages. Hongda states that "Sunfit has engaged in acts of deception upon which Hongda relied." (Docket Entry 166 at 20.) More specifically, Sunfit refers to Mr. Chen's actions that led customers to believe Sunfit and YMS were direct affiliates, including forging a shareholder's agreement using Sunfit's letterhead and seal. (Chen Email, Ex. 7, Docket Entry 144-8; Agrium Email, Ex. 14, Docket Entry 144-15; Wang Decl. ¶ 37, Docket Entry 150-1.) While there is a jury issue as to whether Mr. Chen's conduct, at the time of the sale to Agrium, is attributable to Sunfit, the evidence is clear that any misrepresented or deceptive acts here would have been directed toward Agrium. In other words, there is no

evidence that Hongda relied upon statements or conduct that Mr. Chen displayed towards Agrium or any other customers. *Bumpers v. Cmty. Bank of N. Virginia*, 367 N.C. 81, 90, 747 S.E.2d 220, 227 (2013) ("In the context of a misrepresentation claim brought under section 75–1.1, actual reliance requires that the plaintiff have affirmatively incorporated the alleged misrepresentation into his or her decision-making process: if it were not for the misrepresentation, the plaintiff would likely have avoided the injury altogether.")

Indeed, Hongda also relies upon Sunfit's actions when both U.S.-based customers and representatives from Hongda were present in China to tour Sunfit's facility and meet with Sunfit's representatives. (McKnight Dep. 57:21-58:8, Ex. 4, Docket Entry 144-5; Wang Dep. 111:15-113:9, Ex. 5, Docket Entry 144-6.) The parties are in dispute as to why Hongda's meeting with Sunfit was ultimately held offsite; assuming *arguendo* that Sunfit was attempting to conceal its tour/meeting with a U.S.-based company, Sunfit's conduct along with the evidence of Mr. Chen's actions form the basis of Hongda's breach of contract claim and nothing more. Because this is a simple breach of contract action and the evidence is insufficient to show substantial aggravating circumstances, Sunfit's motion for summary judgment on this issue should be granted. *Boyd v. Drum*, 129 N.C. App. 586, 593, 501 S.E.2d 91, 97 (1998), *aff'd*, 350 N.C. 90, 511 S.E.2d 304 (1999) ("[T]his is just a simple contract case based on the promissory note . . . and the breach of payment on a note does not give rise to an unfair and deceptive trade practice claim.").

Sunfit's Counterclaim (Breach of Contract)

Sunfit also moves for summary judgment as to liability on its breach of contract counterclaim against Hongda. (Docket Entry 150 at 25-26.) In its counterclaim, Sunfit asserts

that Hondga has failed to remit timely payments for 16 shipments of NBPT that had been delivered to Hongda, despite repeated requests to do so. (Second Am. Countercls. ¶¶ 12-30.) In support of its motion, Sunfit submits the declaration of Mr. Wang stating that Sunfit was forced to make repeated demands for payment almost immediately after executing the Agreement. (Wang Decl. ¶ 19.) Hongda's representative, Xu, also testified in a deposition as to issue of late payments as early as November 2011, but further stated that "it became a lot" after May 2012. (Xu Dep. 79:12-80:18.) Sunfit sent Hongda a demand letter on or about October 22, 2012 seeking full and complete payment by October 26, 2012. (Docket Entry 150-4.) Sunfit asserts that Hongda's breach by non-payment excused Sunfit from any further obligations under the Agreement. (Docket Entry 150.)

As previously stated, the existence of a contract and the validity of the Agreement is not in dispute. Hongda argues that it had a right to withhold monies owed to Sunfit based upon Sunfit's anticipatory breach of the Agreement. (Docket Entry 166 at 21-22.) Parties may breach a contract by repudiation. Under North Carolina law, an anticipatory breach occurs when "[a] breach is committed before there is a present duty of performance, and is the outcome of words evincing intention to refuse performance in the future." *Cook v. Lawson,* 3 N.C. App. 104, 107, 164 S.E.2d 29, 32 (1968) (citation omitted) (internal quotations omitted). Repudiation requires "words or conduct evidencing the renunciation or breach [that] must be a positive, distinct, unequivocal, and absolute refusal to perform the contract when the time fixed for it in the contract arrives." *Allen v. Weyerhaeuser, Inc.,* 95 N.C. App. 205, 209, 381 S.E.2d 824, 827 (1989) (internal quotations and citations omitted). "When a party to a contract gives notice that he will not honor the contract, the other party to the contract is no longer

required to make a tender or otherwise to perform under the contract because of the anticipatory breach of the first party." *Profile Investments No. 25, LLC v. Ammons E. Corp.*, 207 N.C. App. 232, 236, 700 S.E.2d 232, 235 (2010) (citation omitted).

Hongda argues that by verbally confronting Sunfit representatives in March 2012 about sales to another U.S.-based company and subsequently demanding written adequate assurance in September 2012 with no response (McKnight Dep. 57:21-22, Docket Entry 146-11; Hongda Letter, Docket Entry 153-1), a question of fact exists as to when the anticipatory breach occurred. (Docket Entry 166 at 22.) The Court disagrees. Although the amount is disputed, Hongda has admitted that it did not remit monies owed to Sunfit. (*See* Docket Entry 166 at 21 ("Hongda does not dispute that it withheld some payments, although there is a dispute as to the amount.")). Sunfit refused to ship NBPT product after July of 2012. The issue of anticipatory breach does not affect Hongda's obligation under the Agreement to pay for NBPT that has already been shipped, invoiced and received as of the date when Hongda treated Sunfit's alleged failure to provide adequate assurance as repudiation of the contract. *Millis Const. Co. v. Fairfield Sapphire Valley, Inc.*, 86 N.C. App. 506, 512, 358 S.E.2d 566, 570 (1987) ("The issue of anticipatory breach does not affect defendant's obligation under its contracts to pay for work performed, invoiced and approved as of the date . . . where defendant alleges plaintiff anticipatorily breached its contracts with defendant."). Anticipatory repudiation arises out of refusal to perform in the future, *see Cook*, 3 N.C. App. at 107, 164 S.E.2d at 32; here, Sunfit already provided and Hongda had already received the shipments which Sunfit references in its counterclaim. Because there is no genuine of material fact as to

whether Hongda failed to remit payment for NBPT shipments received from Sunfit, Sunfit's

motion for summary judgment as to liability on this claim should be granted.

Federal Rule of Civil Procedure 56(d)

In its opposition brief, Hongda requests that the Court deny Sunfit's motion in its

entirety based upon Federal Rules of Civil Procedure 56(d). The Fourth Circuit has held that

> [T]he nonmoving party cannot complain that summary judgment
> was granted without discovery unless that party had made an
> attempt to oppose the motion on the grounds that more time was
> needed for discovery or moved for a continuance to permit
> discovery before the district court ruled. Federal Rule of Civil
> Procedure 56(d)[6] permits a court to deny summary judgment or
> to order a continuance if the nonmovant shows through
> affidavits that it could not properly oppose a motion for
> summary judgment without a chance to conduct discovery. We,
> like other reviewing courts, place great weight on the Rule 56(d)
> affidavit, believing that "[a] party may not simply assert in its brief
> that discovery was necessary and thereby overturn summary
> judgment when it failed to comply with the requirement of Rule
> 56(d) to set out reasons for the need for discovery in an affidavit."

*Evans*, 80 F.3d at 961 (internal citations omitted). The Court has discretionary authority to

grant or deny a party's Rule 56(d) request, and "parties wishing to obtain additional discovery

must 'specifically allege why the information sought would have been sufficient to create a

genuine issue of material fact such that it would have defeated summary judgment.' " *Works*

*v. Colvin*, 519 F. App'x 176, 183 (4th Cir. 2013) (citing *Strag v. Bd. of Trustees*, 55 F.3d 943, 954

(4th Cir. 1995)).

---

[6] Rule 56(d) was formally Rule 56(f). It states that "[i]f a nonmovant shows by affidavit . . . that, for
specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer
considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take
discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Hongda has submitted the declaration of its counsel in support of its Rule 56(d) request. Hongda asserts that it has been denied the opportunity to conduct meaningful discovery "in a number of highly relevant areas." (Docket 166 at 24 (citing Santos Decl., Docket Entry 190)). Hongda argues that Sunfit has failed to produce documents ordered by the Court and wrongly withheld other documents. The Court has reviewed the declaration of Hongda's counsel and concludes that this Rule 56(d) requests is largely an attempt to reargue discovery issues previously brought before the Court. Additionally, it is unclear why Hongda failed to bring forth any new concerns prior to the filing of dispositive motions. In its discretion, the Court should deny Hongda's request.

2. Hongda's Motion for Partial Summary Judgment

Hongda also moves for partial summary judgment against Sunfit for breach of contract. (Docket Entry 145.) Hongda asserts that Sunfit breached the Agreement by selling NBPT to Agrium. Hongda relies upon the same disputed facts previously discussed in Sunfit's motion for summary on Hongda's breach of contract claim. (*See* Docket Entry 146.) Viewing this motion in light most favorable to Sunfit, the Court finds that a genuine issue of material exists precluding summary judgment in favor of Hongda. A reasonable jury could conclude that Sunfit did not directly, or through other representatives, make the sale of NBPT to Agrium in violation of the Agreement. As in Sunfit's motion, material facts are in dispute which should be resolved by a jury. Thus, Hongda's motion should be denied.

**B. YMS's Motion for Summary Judgment/Hongda's Motion for Partial Summary Judgment**

Both Hongda and YMS move for summary judgment as to Hongda's claims against YMS. (Docket Entries 129, 143.) In its Amended Complaint, Hongda asserts claims for

intentional interference with a contractual relationship and violation of the UDTPA against YMS. (Am. Compl. ¶¶ 60-66, 76-89.) For purposes of these cross-motions, Hongda presents evidence that Mr. Chen first contacted Agrium in January 2012. (Chen Email, Docket Entry 144-4.) As previously discussed, Mr. Chen met with Agrium executives and toured Sunfit's plant in China in March 2012. This was the same time that Perkins was in China meeting with Mr. Wang. Hongda again focuses on the follow-up email which Mr. Chen sent to Sheldon Witte at Agrium, which included an explanation that Mr. Chen was a shareholder of Sunfit. (Chen Email, Docket Entry 144-8.) After the July 12, 2012 NBPT sale to Agrium, Mr. Chen communicated with Agrium officials and noted that YMS would be "very glad to be [Agrium's] long term NBPT supplier." (Chen Email, Docket Entry 144-11.) Hongda also points to Mr. Chen's use of the Shareholder's Meeting Resolution to help explain the Sunfit-YMS relationship. (Chen Email, Docket Entry 144-8.) In the same communication, Mr. Chen also represented to Agrium that he had worked for Sunfit since 2002. (*Id.*) Hongda also provided evidence of a YMS-Sunfit joint letterhead in April 2014. (YMS/Sunfit Joint Letterhead, Docket Entry 153-9.) As of March 2017, Mrs. Wang testified that YMS is "helping [Sunfit] in selling [NBPT] to the US, but not Canada." (J. Wang Dep. 156:8-9, Docket Entry 144-18.)

YMS does not dispute that it arranged Agrium's visit to Sunfit's facility in China, nor does it dispute that it sold a single, one-metric ton sample unit of Sunfit's NBPT to Agrium. (Chen Dep. 66:21-23, Docket Entry 130-2.) However, Mr. Chen testified that Sunfit was not aware that he was selling to Agrium. (*Id.*) Additionally, Mr. Chen states that, before November 2012, he knew that there was some type of agreement between Hondga and Sunfit, but had

not seen it. (Chen Dep. 112:11-16.) Outside the one sale to Agrium, there were no additional sales of Sunfit's NBPT to any North American customers. (Chen Dep. 114:11-18.)

Hongda points to inconsistencies in Mr. Chen's testimony. Mr. Chen testified that Mrs. Wang informed him about Hongda's contractual relationships with Sunfit and Albemarle in March or April of 2012, and although unaware of every detail, Mrs. Wang did inform Mr. Chen that he could not sell to North American customers because of Sunfit's Agreement with Hongda. (Chen Dep. 134:19-135:3, Docket Entry 144-19.) Even after being informed that he could not sell in North America, Mr. Chen stated that he did not stop selling NBPT because YMS was a "young company" and he had to "push [himself] very hard to make sales." (Chen Dep. 135:4-11.) In regards to the forgery of the Shareholder's Meeting Resolution, Mr. Chen stated:

> All of the information in this document is created by myself. In other words, I falsely claimed the information in this document. But the fact I never be a Sunfit shareholder and there never be that shareholder meeting resolution, and Sunfit never set up YMS. As I said before, the reason why I make this false document was because I was badly questioned by Agrium during and after the plant visit in Sunfit. They question me badly and doubting my relationship with Sunfit and they question there's no way for me to represent Sunfit and sale NBPT to them. In order to convince my customer and in order to make a sale for my very young company, I made a mistake, make this false document.
>
> All the information in this document is not a fact and I really sorry about the confusion because of this document that I created to all the parties in the lawsuit.

(Chen Dep. 204:9-205:1, Docket Entry 144-24.) As to the follow-up email sent to Agrium representatives explaining the relationship between Sunfit, YMS, and Mr. Chen, he stated that,

these too, were misrepresentations: "[T]his is just my claim. It's not a fact. The fact is we are not related at all." (Chen Dep. 138:23-24, Docket Entry 144-25.) He further stated:

> Let me put this way: I make a mistake for making a false statement here, and even I have a reason to do that because I want to make sale for my young company, but in my heart, I feel sorry to all the parties in this lawsuit because I give you guys a confusion. I apologize for that. This is a mistake I made.

(Chen Dep. 146:12-18, Docket Entry 144-26.)

1. Hongda's Claim Against YMS for Intentional Interference with Contractual Relationship

Both YMS and Hongda's motions for partial summary judgment as to Hongda's claim against YMS for intentional interference with a contractual relationship focus on the establishment of the last three elements; that is, (1) conduct which demonstrates that YMS intentionally induced Sunfit not to perform under its contract with Hongda, (2) YMS acted without justification; and (3) that YMS's sale to Agrium caused actual pecuniary harm to Hongda. (Docket Entries 130 at 5-8; 144 at 12-20.) As previously noted, a party must show that the defendant intentionally induced a third party not to perform under the contract without justification. *White*, 177 N.C. App. at 768–69, 629 S.E.2d at 901 (citation omitted). The crux of YMS's argument lies in whether it is designated either as a party to the Hongda-Sunfit Agreement or a "non-outsider" under North Carolina law. YMS is correct in that if it is a party to the Hongda-Sunfit Agreement, then it could not be liable for interfering with a contract in which it is a party. *See Waters v. Collins & Aikman Prod. Co.*, 208 F. Supp. 2d 593, 595 (W.D.N.C. 2002) (citation omitted) ("North Carolina decisions and federal case law interpreting North Carolina law have held consistently that a party to a contract cannot tortiously interfere with that contract."). YMS asserts that its designation as a "non-outsider"

would entitle it to immunity from a tortious interference claim as it had a legitimate business purpose in interfering with the contract. (Docket Entry 130 at 7-8.) As the North Carolina Court of Appeals has explained, "[a] 'non-outsider' . . . is one who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter." *Hubbard v. N. Carolina State Univ.*, 789 S.E.2d 915, 922 (N.C. Ct. App. 2016) (citations and quotations omitted). "However, [t]he qualified privilege of a non-outsider is lost if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." *Bloch v. The Paul Revere Life Ins. Co.*, 143 N.C. App. 228, 240, 547 S.E.2d 51, 60 (2001) (citations and quotations omitted). Again, the claim against a "non-outsider" turns upon whether the defendant acted with legal malice. *Varner*, 113 N.C. App. at 702, 440 S.E.2d at 298.

Here, it is clear that YMS was not a party to the Hongda-Sunfit Agreement. It was not a signatory on the contract, and no party asserts that YMS was involved in any of the contract negotiations. However, as a "non-outsider," YMS asserts that it nevertheless had a legitimate business interest of its own as a NBPT supplier and it did not act with legal malice. (Docket Entry 130 at 8.) In response to YMS's assertion and in support of its motion, Hongda asserts that YMS's actions were unjustified and that YMS's qualified privilege claim is not appropriate here as this case involves interference with "existing, rather than prospective, contractual relations." (Docket Entry 144 at 19.) The Court first notes that Hongda's application of the law is misplaced. Qualified immunity from liability for a tortious inference claim is not limited to prospective contractual relations. In numerous instances, North Carolina courts have recognized the privileged as it relates to inducement of existing contracts. *See Georgia Pac.*

*Consumer Prod., LP v. Von Drehle Corp.*, 618 F.3d 441, 456-57 (4th Cir. 2010) (applying North Carolina law and considering justifiable inference on existing contracts); *Sellers v. Morton*, 191 N.C. App. 75, 82, 661 S.E.2d 915, 921 (2008) (discussing justifiable interference with an existing contract); *Hooks*, 322 N.C. at 222, 367 S.E.2d at 650 (discussing justifiable interference with an existing at-will employment contract and existing non-compete agreements).

Considering the evidence before the Court, there are material facts in dispute on the issue of whether YMS acted with justifiable interference or with legal malice which preclude summary judgment for both YMS and Hongda. It is clear that YMS, as an NBPT supplier, was a competitor of Hongda. However, YMS's acts (through Mr. Chen) of arranging and participating in the Agrium visit to Sunfit's facility, and subsequent forgery and misrepresentations to U.S.-based customers raise questions as to whether YMS engaged in legally malicious acts or beyond its authority. This issue precludes summary judgment in favor of either party.

Additionally, material facts in dispute also create an issue of whether YMS intentionally induced Sunfit to breach the Agreement. YMS argues that the one-time sale to Agrium of a single metric ton (1,000kg) was not a *material* breach of the Hongda-Sunfit Agreement. (Docket Entry 130 at 6.) As previously discussed, there is a genuine issue of material fact as to whether sale of NBPT to Agrium constituted a material breach on the part of Sunfit. In any event, "[i]t is well established that '[i]n order for a breach of contract to be actionable it must be a material breach, one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform.'" *Supplee*, 239 N.C. App. at 220-21, 768 S.E.2d at 593 (citing *Long v. Long*, 160 N.C.

App. 664, 668, 588 S.E.2d 1, 4 (2003)). Additionally, "[t]he question of whether a breach of contract is material is ordinarily a question for a jury." *Charlotte Motor Speedway, Inc. v. Tindall Corp.,* 195 N.C. App. 296, 302, 672 S.E.2d 691, 695 (2009). Here, whether the single sale to Agrium constitutes a material breach is an issue that should be reserved for the jury. Although YMS argues that the actual sale amounted to .22% of the entire sales under the Agreement, the amount of NBPT here is not the sole determinative factor. The parties here have an exclusivity provision; thus, a reasonable jury could find that any sale in violation of the parties' exclusive rights would be go to the very heart of the agreement. Thus, YMS's argument is unpersuasive.

YMS also asserts that Sunfit was not aware that the NPBT was intended for Agrium, nor was it aware that it would ultimately end up in North America. (Docket Entry 167 at 8.) Again, the circumstances around the issue of Sunfit's awareness are in dispute (*see* supra § A) and should be reserved for the jury.

As to the whether Hongda has been damaged by YMS's actions, the Court cannot conclude at this time that Hongda fails to show any damages based upon YMS's actions. YMS asserts that it could not be responsible for any alleged loss profits, nor can Hongda show that, absent YMS's actions, Hongda would have made the sale of NBPT to Agrium. (*See* Docket Entries 130 at 8, 155 at 9.) At the time of the sale, Hongda was the sole distributor of Sunfit's NBPT in North America and Agrium was a U.S.-based company. Thus, the Court cannot conclude that YMS's actions did not damage Hongda. Summary judgment, therefore, should not be granted in favor of YMS on this issue.

## 2. Hongda's Claim Against YMS for Violation of the UDTPA

Both YMS and Hondga also move for summary judgment on Hongda's claim against YMS for violation of the UDTPA. The evidence demonstrates that there is no genuine issue as to whether YMS's acts were unfair or deceptive. Mr. Chen admitted that he engaged not only in deceptive acts, but also forged documents in efforts to generate business for YMS. This conduct was not only deceptive, but also unfair.[7] *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711. ("A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive.") However, there is a genuine issue as to causation and damages on this claim. YMS argues that Hongda must demonstrate detrimental reliance. (Docket Entry 130 at 10-12.) However, in an unpublished decision, this Court has previously noted that detrimental reliance is not necessarily required in every UDTPA claim:

> North Carolina cases regarding the elements of a Chapter 75 claim use the phrase "detrimental reliance" and "proximate cause" in a confusing manner. In *Pearce v. American Defender Life Ins. Co.,* 316 N.C. 461, 343 S.E.2d 174 (1986), the North Carolina Supreme Court noted that the required element for pleading a Chapter 75 claim is "similar to the detrimental reliance requirement under a fraud claim. It must be shown that the Plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." *Id.* at 471, 343 S.E.2d 174, 343 S.E.2d 80. Later cases picked up this language and found that detrimental reliance is required in addition to a showing of actual injury, when detrimental reliance in those cases was a way of showing proximate cause. *See, e.g., Business Cabling v. Yokely,* 182 N.C. App. 657, 643 S.E.2d 63 (2007); *Forbes v. Par Ten Group, Inc.,* 99 N.C. App. 587, 394 S.E.2d

---

[7] YMS asserts that Hongda's allegations of a civil conspiracy fail as a matter of law because this action is not recognized in North Carolina. (Docket Entry 130 at 10.) The Court notes that North Carolina does not recognize civil conspiracy as an independent cause of action. *New Bar P'ship v. Martin,* 221 N.C. App. 302, 310, 729 S.E.2d 675, 682 (2012). Here, Hongda does not assert an independent cause of action for civil conspiracy against YMS.

643 (1990). Thus, detrimental reliance is not necessarily required to be pled for a Chapter 75 claim to survive, but the Plaintiff does have to plead facts showing that the conduct of the defendant proximately caused injury to Plaintiff.

*Nixon v. Alan Vester Auto Grp., Inc.*, No. 1:07CV839, 2009 WL 382743, at *2 n.3 (M.D.N.C. Feb. 12, 2009) (unpublished). In the instant matter, the issue of causation and damages should be reserved for the jury. *Ausley v. Bishop*, 133 N.C. App. 210, 217, 515 S.E.2d 72, 77 (1999) ("The jury determines in what amount, if any, the complaining party is injured and whether the occurrence was the proximate cause of those injuries."). As such, the Court should deny summary judgment in favor of either Hongda or YMS on this claim.[8]

## C. Third-Party Defendants' Motions for Summary Judgment

Third-Party Defendants all move for summary judgment as to Sunfit's UDTPA claim against them. Third-Party Defendants Perkins, McKnight and Xu were member-mangers of Hongda during the 2011 – 2012 time period. (Joint Stipulation ¶¶ 12-14, Docket Entry 199.) Vasto, a Delaware corporation formed in 2012, purchased NBPT in July 2012 that was produced in China but not by Sunfit. (*Id.* ¶ 11.) KaDi, a North Carolina limited liability company formed in 2006, had no contractual relationship with Sunfit. (*Id.* ¶¶ 6, 18.) KaDi's members at the time of organization included McKnight and others. (*Id.* ¶ 7.) On at least one

---

[8] YMS also argues that Hongda's UDTPA claim does not reach the territorial limits of N.C. Gen. Stat. § 75.1-1. (Docket Entry 155 at 10-13.) This argument is unpersuasive. It is undisputed that Hongda is organized under the laws of North Carolina and its principal place of business is in High Point, North Carolina; thus any financial injury to Hongda would have occurred in North Carolina. *See McElmurry v. Alex Fergusson, Inc.*, No. 1:04CV389, 2006 WL 572330, at *10 (M.D.N.C. Mar. 8, 2006) (unpublished) (collecting cases). Plaintiff's reliance upon *The In Porters, S.A. v. Hanes Printables, Inc.*, is misplaced as that case focused on whether, in considering a motion to dismiss, the North Carolina UDTPA was "available to a foreign plaintiff suing a resident defendant over alleged foreign injuries having a negligible effect, if any, on North Carolina trade or commerce." 663 F. Supp. 494, 501 (M.D.N.C. 1987).

occasion, Hongda wired $102,780.00 to KaDi in May 2012. (*Id.* ¶ 9.) Eco Agro, a North

Carolina limited liability company formed in December of 2012, markets and sells a variety of

products including N-Yield, a patented formulated product used as a fertilizer additive. (*Id.* ¶

3.) Xu, Perkins, McKnight, along with others, were members of Eco Agro during the relevant

time period. (*Id.* ¶ 5.)

In its Amended Third-Party Complaint, Sunfit alleges that Third-Party Defendants

"aided, abetted and were, in many cases, the recipients of the fraudulent transfers" made by

Hongda, and that Perkins, Xu, and McKinght used the business entities of Eco Agro, KaDi

and Vasto as vehicles to commit violations of the UDTPA. (Am. Third-Party Compl. ¶¶ 2,

19, Docket Entry 51.) Sunfit further alleges that Third-Party Defendants unfair or deceptive

conduct transpired prior to the execution of the Agreement and throughout the duration of

the Agreement, with the ultimate purpose of using monies owed to Sunfit to invest in a

competing distribution system for the sale of NBPT from China to the United States. (Second

Am. Countercls. ¶¶ 37-41.)

The individual Third-Party Defendants argue that Sunfit is unable to demonstrate any

unfair or deceptive trade practices; instead, the records only reflects that (1) Sunfit had no

contractual relationship with Third-Party Defendants; (2) there were no misrepresentations

made by Third-Party Defendants to Sunfit; (3) Third-Party Defendants did not engage in

fraud; and (4) Third-Party Defendants did not receive any distributions from Hongda other

than in the ordinary course of business. (Docket Entries 132, 134, 136, 138, 140, 142.)[9]

---

[9] In their briefs, several of Third-Party Defendants also assert that Hongda had a right to protect its ability to recover damages by withholding making any payments to Sunfit until Sunfit retracted its repudiation of the contract. (Docket Entries 132 at 8, 136 at 9, 138 at 13-18, 140 at 13-18, 142 at 13-

After reviewing the record, the undersigned concludes that factual disputes preclude summary judgment for the individual Third-Party Defendants Xu, Perkins, and McKnight. In the light most favorable to Sunfit, a reasonable jury could conclude that Xu, Perkins and McKnight conspired to commit unfair or deceptive trade practices as evidenced through the documents of record, including: (1) email communications in mid-2011 between Xu, Perkins, and McKnight discussing a secret business venture (through Plant J) to bypass the Sunfit Agreement and the subsequent concerns of Perkins to Xu and McKnight that someone had leaked their plans; (2) McKnight, shortly thereafter, entering into the Agreement on behalf of Hongda, presumably aware of the reciprocal exclusivity provision; (3) Perkins's August 16, 2011 email to Agrium representatives describing the upcoming availability of NBPT from Plant J in China; (4) email discussions regarding whether to use Vasto or Hongda for NBPT shipments; and email discussions regarding a proposed multi-million dollar payable balance to Sunfit and confronting Sunfit officials for damage compensation. (*See* Ex. J, Docket Entry 165-10, Ex. AH, Docket Entry 165-17; Ex. AK, Docket Entry 165-20; Ex. AD, Docket Entry 163-19; Ex. BY, Docket Entry 165-51; Ex. CZ, Docket Entry 194; Ex. BC, Docket Entry 165-34.)

---

18.) Some also assert that Hongda had a right to be concerned about being able to successfully collect on a judgment against Sunfit, as "[e]nforcing U.S. judgments against Chinese companies is notoriously difficult" because of lack reciprocity. (*See* Docket Entries 138 at 16-18, 140 at 16-18, 142 at 16-18.) The Court notes that "[w]hile such difficulties are legitimate, they have not prevented federal courts from entering judgments granting relief in cases involving Chinese defendants." *Zhaoyin Wang v. Beta Pharma, Inc.*, No. 3:14-CV-01790 (VLB), 2015 WL 5010713, at *8 (D. Conn. Aug. 24, 2015) (unpublished) (collecting cases). In any event, the issue of whether Hongda would be successful in collecting judgment on a breach of contract claim is not dispositive of whether Third-Party Defendants' acts are sufficient to establish a claim under the UDTPA.

The individual Third-Party Defendants vehemently disagree with the characterization of the evidence presented by Sunfit, and further argue that the unsubstantiated allegations fail to demonstrate unfair or deceptive behavior that is the direct proximate cause of Sunfit's injuries. Third-Party Defendants further state that Sunfit has not alleged damages beyond the payments due by Hongda under the Agreement. The Court notes that, in this case, "[o]ccurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury[.]" *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 902 (4th Cir. 1996) (citing *Hardy v. Toler*, 288 N.C. 303, 218 S.E.2d 342, 346-47 (1975)). The individual Third-Party Defendants also argue that the North Carolina Limited Liability Company Act, N.C. Gen. Stat. § 57D-1-01 *et seq.*, disclaims personal liability of members and managers of a LLC. However, North Carolina courts have held that

> It is well settled that one is personally liable for all torts committed by him, including negligence, notwithstanding that he may have acted as agent for another or as an officer for a corporation. *Palomino Mills, Inc. v. Davidson Mills Corp.*, 230 N.C. 286, 52 S.E.2d 915 (1949); *see also Esteel Co. v. Goodman*, 82 N.C.App. 692, 348 S.E.2d 153 (1986), *disc. rev. denied*, 318 N.C. 693, 351 S.E.2d 745 (1987) (An officer of a corporation who commits a tort is individually liable for that tort, even though acting on behalf of the corporation in committing the act.). Furthermore, the potential for corporate liability, in addition to individual liability, does not shield the individual tortfeasor from liability. Rather, it provides the injured party a choice as to which party to hold liable for the tort. *Palomino Mills, supra* 230 N.C. at 292, 52 S.E.2d at 919.

*Strang v. Hollowell*, 97 N.C. App. 316, 318-19, 387 S.E.2d 664, 666 (1990). "North Carolina courts have also applied this principle of personal liability to statutory violations, including unfair or deceptive trade practices." *Cardinal Health 414, Inc. v. Schwarz Properties, Inc.*, No. 1:06CV570, 2008 WL 5216189, at *5 (M.D.N.C. Dec. 11, 2008) (unpublished) (citing *Baker v.*

*Rushing,* 104 N.C. App. 240, 247-48, 409 S.E.2d 108, 112 (1991)). Thus, the individual Third-Party Defendants are not automatically shielded from the UDTPA claim as a result of their member-manager status with Hongda. In sum, genuine issues of material fact preclude a summary judgment finding in favor of Xu, Perkins, and McKnight. Therefore, their motions should be denied.

The Third-Party Corporate Defendants also move for summary judgment. As to Vasto, the Court concludes that there are genuine issues of material fact that preclude summary judgment on the UDTPA claim. As mentioned above, email correspondence from the individual Third-Party Defendants suggest that Vasto may have been created to circumvent the Sunfit-Hongda Agreement. Vasto asserts that Hongda used Vasto as an alternate supplier when Sunfit was refusing to ship NBPT. (*See* Perkins Dep. 251:7-15, Docket Entry 134-16.) Sunfit also provides Hongda's general ledgers which show several transactions from Hongda to Vasto, though Vasto argues that Sunfit fails to show that any of the transactions occurred outside the normal course of business. (Hongda Ledger, Docket Entry 165-79.) These documents and other evidence create a genuine issue of material fact as to Vasto's UDTPA claim.

As to KaDi and Eco Agro, the Court also finds that Sunfit has failed to establish a prime facie claim against them. Both Hongda and KaDi share at least one common member-manager, McKnight. However, Sunfit's reliance on numerous financial business transactions from Hongda to KaDi is insufficient to constitute unfair or deceptive trade practices on the part of KaDi. Sunfit attempts to connect KaDi to the formation of Eco Agro, however KaDi was formed approximately six years prior to KaDi to assist Burling Chemical in the sale of

surfactants, a chemical used in detergents. (Articles of Incorporation, Docket Entry 132-3; McKnight Dep. 12:11-22, Docket Entry 153-14; McKnight Dep. 10:15-11:14, Docket Entry 200.) Moreover, Hongda's general ledger references financial transactions between Hongda and KaDi that demonstrate that they were engaging in the sale of various chemical products other than NBPT. (Honda Ledger/Material Inventory, Docket Entry 177; McKnight Aff. ¶ 4, Docket Entry 172-4.) Because the evidence is insufficient to establish a UDTPA claim against KaDi, its motion should be granted.

As to Eco Agro, this entity was not formed until after the termination of the parties' agreement. Sunfit relies upon the email communications before the execution and after termination of the Agreement which includes Xu, McKnight and Perkins discussing with others an NBPT coating project. (Ex. AF, Docket Entry 165-15; Ex. BI, Docket Entry 165-38; Ex. BL, Docket Entry 165-41.) Sunfit states that "McKnight himself makes repeated reference to the NBPT technology which now resides with Eco Agro being an asset of Hongda." (Docket Entry 162 at 20.) However, Perkins states that the "Coated NBPT product is a simple physical shell around NBPT with no other additives . . . [and] is not in the same chemical class as N-yield." (Perkins Aff. ¶ 4(c), Docket Entry 178-4.) Also, the email communications makes no specific reference of Eco Agro. Because the evidence is insufficient to establish a UDTPA claim against Eco Agro, its motion should be granted.

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that:

1. Sunfit's Motion for Partial Summary Judgment (Docket Entry 149) be **GRANTED IN PART** as to Hongda's First, Third, Fifth and Sixth Causes of Action in the First

Amended Complaint against Sunfit, and Sunfit's Counterclaim for Breach of Contract, and **DENIED IN PART** as to Hongda's Second Cause of Action in the First Amended Complaint against Sunfit;

2. Hongda's Motion for Partial Summary Judgment (Docket Entry 145) be **DENIED**;

3. Hongda's Motion for Partial Summary Judgment (Docket Entry 143) be **DENIED**;

4. YMS's Motion for Partial Summary Judgment (Docket Entry 129) be **DENIED**;

5. Third-Party Defendants Vasto, McKnight, Perkins, and Xu's Motions for Summary Judgment (Docket Entries 133, 137, 139, 141) be **DENIED**; and

6. Third-Party Defendants Eco Agro and KaDi's Motions for Summary Judgment (Docket Entries 131, 135) be **GRANTED**.

Joe L. Webster
United States Magistrate Judge

March 15, 2018
Durham, North Carolina