IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| HONGDA CHEM USA, LLC and HONGDA GROUP LIMITED, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| SHANGYU SUNFIT CHEMICAL COMPANY, LTD, and YMS AGRICULTURE INTERNATIONAL CORP., | ) ) ) ) |
| Defendants. | ) ) |
| SHANGYU SUNFIT CHEMICAL COMPANY, LTD., | ) ) ) |
| Third Party Plaintiff, | ) ) |
| v. | ) ) |
| GARY DAVID MCKNIGHT; RAYMOND P. PERKINS; WEI XU; and VASTO CHEMICAL COMPANY, | ) ) ) ) |
| Third Party Defendants. | ) |

1:12-CV-1146

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

In October 2019, after a seven-day trial, a jury returned a verdict finding that

Hongda Chemical USA, LLC failed to pay for many tons of a chemical fertilizer additive

known as NBPT that Hongda ordered and received from Shangyu Sunfit Chemical

Company, Ltd., in breach of a contract with Sunfit, and that Hongda, its owners, and an

affiliated company engaged in a large-scale fraudulent scheme related to these purchases.

The jury awarded Sunfit millions of dollars in damages for Hongda's breach of contract—specifically, $9,867,035—based largely on a stipulation as to the amount of unpaid invoices.

The jury also found that Hongda, its owners, and the affiliated company never intended to pay for all of the NBPT that Hongda ordered from Sunfit; used the money Hongda obtained from selling the NBPT to fund other business enterprises instead of paying Sunfit, as Hongda had agreed to do; competed with Sunfit in deliberate violation of an exclusivity provision in the contract; and made misrepresentations in furtherance of the fraudulent scheme. The jury awarded Sunfit $9,867,035 in breach of contract damages and $6,000,000 over and above that for Hongda's unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, and $15,867,035 in unfair trade practices damages against Hongda's owners and Vasto Chemical Company, the affiliated company.

Hongda, its owners, and Vasto now ask for a new trial or, in the alternative, remittitur. The evidence was overwhelming that Hongda, its owners, and Vasto committed unfair trade practices that were part and parcel of Hongda's refusal to pay for the NBPT, and to the extent the jury awarded unfair trade practices damages against Hongda's owners and Vasto in the amount of money equal to the breach of contract damages, that award is well-supported by the evidence. But as the unfair trade practices damages were larger than the breach of contract damages and appear to have been based on a lost profits theory that Sunfit did not disclose pre-trial, remittitur is appropriate as to the remainder of the Chapter 75 damages.

David McKnight, Ray Perkins, and Wei Xu organized Hongda[2] in late 2010 for the purpose of manufacturing and distributing chemical products. *See* Doc. 1 at ¶ 12. That same year, Sunfit and Hongda began doing business with each other under a one-year distribution agreement. Sunfit, a Chinese company, sold NBPT it manufactured in China to Hongda for distribution in North America. NBPT was much in demand in the United States, and Hongda's principals had a relationship with an American buyer.

In 2011, the parties entered into an exclusive sales contract wherein Hongda agreed it would only buy Chinese-manufactured NBPT from Sunfit, and Sunfit agreed it would only sell its NBPT to North American buyers through Hongda. Doc. 1-1. The contract had a minimum purchase provision requiring Hongda to buy at least one million pounds of NBPT a year from Sunfit for the first two years, and a minimum of two million pounds a year by 2014. *Id.* at ¶ 5.

Under this contract, Hongda ordered and Sunfit shipped thousands of pounds of NBPT to Hongda, for which Hongda was required to pay within 90 days from shipment.

---

[1] For most facts recited, the Court does not provide a citation to the record, as the parties did not provide a complete trial transcript and the facts are based on the Court's memory of the evidence. The Court has cited some of the exhibits made part of the record pre-trial, but all such documentary evidence cited was admitted at trial.

[2] The plaintiffs are Hongda Chem USA, LLC and Hongda Group Limited, LLC, but for purposes of this case they acted and have been treated as one entity. The court will do the same here. While there was some dispute at trial about Mr. Xu's role with Hongda, viewed in the light most favorable to Sunfit he was at least an owner and a director. Each of the individual third-party defendants was involved in the operation of Hongda, and the evidence showed that they acted together and on each other's behalf. For simplicity, the Court will refer to Mr. Xu, Mr. McKnight, and Mr. Perkins collectively as "the owners."

*Id.* at ¶ 11.  While Hongda paid for some of the NBPT, Hongda was consistently late in paying invoices, and it quickly grew behind in what it owed Sunfit.  Hongda blamed these late payments on its buyer, but the evidence showed that Hongda's buyer was paying Hongda on time or close to it, at a price higher than what Sunfit charged Hongda, and that Hongda often used a factoring service to obtain earlier payment as well.  Instead of paying Sunfit, Hongda and its owners used these moneys to fund Hongda's business operations and transferred large sums of money to other entities they owned.  Emails between the owners made it clear that they never intended to pay Sunfit for all the NBPT, but instead were planning to cheat Sunfit the entire time.

Despite the exclusivity provision in the 2011 contract with Sunfit, from day one Hongda and its owners were working to identify a different Chinese source of NBPT, including the possible establishment of their own NBPT plant in China.  In order to avoid detection, the owners established a new limited liability company, the third-party Vasto, through which they made at least one sale to a U.S. company of Chinese NBPT they got from someone other than Sunfit.  Their plan was to find an excuse to terminate the contract with Sunfit as soon as they had an alternative source for NBPT, thus cutting Sunfit out of the American market and increasing their own profits.  As Hongda had no other significant customers or business other than Sunfit, it was essentially using money it owed Sunfit to create a company to compete with Sunfit and take over its market share.

By the summer of 2012, Hongda was seriously behind on paying invoices, and Sunfit was no longer willing to ship NBPT to Hongda until it was paid for the overdue invoices.  Hongda began claiming, without credible evidence, that Sunfit was violating its

obligations under the exclusivity provision, which Sunfit denied. Sunfit stopped

shipments and gave Hongda notice that it would terminate the contract if Hongda did not

bring the account current. Hongda did not do so and instead filed this lawsuit claiming

that Sunfit breached the 2011 exclusive sales contract by selling NBPT to another North

American company in violation of the contract. Doc. 1. Sunfit counterclaimed against

Hongda alleging state law claims for breach of contract, conversion, Chapter 75

violations, fraudulent transfer, and quantum meruit. Doc. 51. Sunfit also sued Hongda's

owners and Vasto for unfair trade practices and for making fraudulent transfers. *Id.*[3]

At summary judgment, the evidence was undisputed that Hongda had bought tons

of NBPT from Sunfit for which it had failed to pay. Doc. 209 at 30. Summary judgment

was thus granted in favor of Sunfit on its claim that Hongda had breached the contract, *id.*

at 52–53, though there remained disputes over the amount Sunfit was entitled to recover

as a result of the unpaid invoices and whether the breach of contract damages should

include the amount of a VAT tax Sunfit had paid. Hongda's breach of contract claim and

most of Sunfit's state law claims, including the Chapter 75 unfair trade practices claims,

also remained for trial.

Trial began on October 7, 2019. Minute Entry 10/07/2019. In support of its

breach of contract claim, Hongda presented evidence that on one occasion Sunfit sold a

---

[3] Sunfit made claims against other third-party defendants as well, but those claims were dismissed along the way and will not be discussed further.

small amount of NBPT to YMS Agriculture International Corp.,[4] which YMS then sold

to a United States customer.  Hongda had not known of this sale before filing suit, and it

was not a basis for Hongda's claims before termination that Sunfit was violating the

exclusivity provision.  But at trial Hongda contended this sale constituted an intentional

breach of the exclusivity provisions by Sunfit.  Sunfit's evidence showed that it did not

know YMS would sell the NBPT in the United States; the sales of NBPT to Hongda, if

Hongda had paid, would have been very profitable for Sunfit (with a minimum profit of

$3 million a year); and Sunfit thus had no motive to violate the exclusivity provision with

a one-time sale of an insignificant amount of NBPT.

On its counterclaim for breach of contract, Sunfit sought damages in the amount of

the unpaid invoices, plus interest and VAT taxes.[5]  The parties stipulated to the amount

on unpaid invoices and the interest, $9,061,729, and to the amount Sunfit had paid in

VAT taxes, $805,306, leaving it to the jury to determine if those taxes should be included

in the damages award.  *See* Doc. 286.  Sunfit did not ask the jury for lost profits in

connection with the breach of contract claim.

As to its extra-contractual claims, Sunfit offered substantial and credible evidence

of many unfair trade practices, as discussed *infra*.  During closing argument, counsel for

---

[4] Well into the litigation and based on information learned in discovery, Hongda added YMS as a defendant, contending that YMS had interfered with Hongda's contract with Sunfit.  The jury ruled in favor of YMS on this claim, and Hongda has not raised any argument that this verdict should be vacated.  Therefore, the Court will leave YMS out of it from here on.

[5] The evidence showed that upon shipping the NBPT out of China, Sunfit had to pay a value-added tax ("VAT").  If Sunfit was paid in China for the NBPT within a certain amount of time, the VAT tax would be refunded.  As a result of Hongda's failure to pay, Sunfit was not able to obtain refunds of the VAT taxes paid.

Sunfit argued that damages flowing from the unfair and deceptive acts included the $9,867,035 in breach of contract damages plus $12 million for lost profits on the minimum purchases Hongda was required to make under the contract. Doc. 321-2 at 27–28. Without objection, counsel for Sunfit pointed out that the contract had four more years to run at the time of Hongda's breach and reminded jurors of testimony by Sunfit's representative that Sunfit would have made a minimum of $3 million in profits each of those four years had the contract continued for the full term. *Id.* Counsel for Sunfit asked the jury to award Chapter 75 damages in the amount of $12 million against Hongda, and $12 million plus the contract damages of $9,867,035 against each of Hongda's owners and Vasto. *Id.*[6]

In rebuttal argument, Sunfit's counsel reiterated that the contract required Hongda to buy one million pounds of NBPT per year and referred to testimony that Sunfit had a "30 percent [profit] margin" on NBPT it sold to Hongda, which he contended supported the $3 million per year calculation. *Id.* at 28–29. At this point, counsel for Hongda made a non-specific objection, a motion for new trial, and a motion to strike, which the Court denied. *Id.* at 29.[7]

Following closing arguments, the Court instructed the jury on the law and how it should calculate its award of damages on the various claims if they were reached. Doc.

---

[6] Counsel for Sunfit made no other suggestion to the jury about the amount of Chapter 75 damages, and it has pointed to no other evidence in the record that puts a dollar amount on, or from which the jury could have calculated, its Chapter 75 damages.

[7] The parties have not provided a transcript of any further discussion of this objection outside the jury's presence.

309. As to Sunfit's Chapter 75 claims, the Court instructed the jury that if they found Sunfit had proven that Hongda, its owners, or Vasto had committed unfair or deceptive trade practices in or affecting commerce that damaged Sunfit, "then Sunfit is entitled to at least nominal damages of $1, and if [Sunfit proved] actual damages by the greater weight of the evidence, to any actual damages flowing from the specific misrepresentations or conduct." *Id.* at 30. The Court further instructed the jury that it should not include any damages awarded against Hongda on Sunfit's breach of contract claim in its calculation of damages for Sunfit's Chapter 75 claim against Hongda. *Id.* at 31. However, the Court did instruct the jury that it could include the damages for breach of contract in its Chapter 75 damage awards against Vasto, David McKnight, Ray Perkins, and Wei Xu, but only if these damages flowed from the specific conduct it found in violation of Chapter 75. *Id.*

The jury returned a verdict in Sunfit's favor. Doc. 307. The jury found that Sunfit was entitled to recover $9,867,035 for Hongda's breach of contract, which was the total of the unpaid invoices and the unrefunded VAT taxes, and rejected Hongda's claim that Sunfit had breached the contract. *Id.* at ¶¶ 1–2. The jury also found that Hongda, its owners, and Vasto had each engaged in various specific acts that the Court had concluded during the charge conference constituted unfair and deceptive trade practices in violation of Chapter 75. *Id.* at ¶ 15.[8] The jury awarded Chapter 75 damages against Hongda on

<hr />

[8] Specifically, the jury found that Hongda "[e]nter[ed] into the 2011 contract with Sunfit with the intent to disregard and breach the exclusivity provisions," ¶ 15(a), and "[c]onceal[ed] its sale of Plant J NBPT to North America from Sunfit," ¶ 15(g); that Hongda and its owners "conspire[d] in the creation of Vasto as a vehicle to sell NBPT in North America and circumvent Sunfit's exclusivity," ¶ 15(c), "[p]articipate[d] in and support[ed] the development of an NBPT

this claim in the amount of $6,000,000 and against the third-party defendants in the amount of $15,867,035.  *Id.* at ¶ 16.  The jury also concluded that Hongda had fraudulently transferred $2.75 million that rightfully belonged to Sunfit to other entities connected to Hongda's owners.  *Id.* at ¶¶ 7–8.

The Court entered judgment in accordance with these findings, trebling the Chapter 75 damages as authorized by North Carolina law.  N.C. Gen. Stat. § 75-16. Thus, judgment was entered against Hongda for breach of contract in the amount of $9,867,035 and for unfair trade practices in the amount of $18,000,000, calculated by trebling the jury award of $6,000,000.  Doc. 319 at 2.  The Court trebled the jury verdict of $15,867,035 against the owners and Vasto and entered judgment against them in the amount of $47,601,105.  *Id.*  The Chapter 75 judgments were joint and several.

Hongda, its owners, and Vasto have now filed a motion for a new trial or, in the alternative, for remittitur.  Doc. 320.  At most, they make only passing reference to the jury's other liability verdicts and breach of contract damages.  Instead, they direct their attention almost in total to the unfair trade practices damages, which they contend were not supported by the evidence and were unfair.

**APPLICABLE LEGAL PRINCIPLES**

---

plant in China to circumvent Sunfit's rights [to] exclusivity," ¶ 15(d), and "[m]isrepresent[ed] Hongda's sale activities in North America to Sunfit," ¶ 15(e); and that Hongda, its owners, and Vasto "[e]ngage[d] in a pattern of deception designed to deprive Sunfit of the benefits of the contract between Hongda and Sunfit," ¶ 15(b), and "[a]ctively solicit[ed] customers of North America to purchase NBPT manufactured in China by Plant J other than Sunfit."  ¶ 15(f).

A court should grant a motion for a new trial only if the verdict (1) is against the clear weight of the evidence, (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice. *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003).[9] Unlike a motion for judgment as a matter of law, the district court may weigh evidence, assess credibility, and exercise its discretion in ruling on a motion for a new trial. *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994); *see also Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998).

Under Rule 59(a) of the Federal Rules of Civil Procedure, a court may order a new trial nisi remittitur if it "concludes that a jury award of compensatory damages is excessive," *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 502 (4th Cir. 2007), or will result in a miscarriage of justice. *Bennett v. Fairfax Cty.*, 432 F. Supp. 2d 596, 599–600 (E.D. Va. 2006). Remittitur is a process whereby a "trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award." *Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 593 (4th Cir. 1996). The permissibility of remittitur is well-settled and if a reviewing court concludes that a verdict is excessive, "it is the court's duty to require a remittitur or order a new trial." *Id.* Whether damages are excessive is a decision "entrusted to the sound discretion of the district court." *Robles v. Prince George's Cty.*, 302 F.3d 262, 271 (4th Cir. 2002); *see also Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 334 (4th Cir. 2013).

---

[9] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

A district court sitting in diversity must apply substantive state law standards when it considers a motion for a new trial or for remittitur based upon the jury's damage award. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 438–39 (1996); *Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 280 (4th Cir. 1999). Under North Carolina law and as relevant here, a new trial may be granted for excessive damages "appearing to have been given under the influence of passion or prejudice," as well as for "[i]nsufficiency of the evidence to justify the verdict." N.C. Gen. Stat. § 1A-1, Rule 59(a)(6)–(7). In the context of a motion for a new trial, insufficiency of the evidence means the verdict was "against the greater weight of the evidence." *Justus v. Rosner*, 371 N.C. 818, 825, 821 S.E.2d 765, 770 (2018). Discretionary remittitur is also appropriate under North Carolina law if the party obtaining the judgment consents when a verdict "exceeds the evidence." *See Redevelopment Comm'n of Durham v. Holman*, 30 N.C. App. 395, 397, 226 S.E.2d 848, 849–50 (1976) (citing N.C. Gen. Stat. § 1A-1, Rule 59).

## ANALYSIS

Hongda does not seriously challenge the jury's finding on the amount of damages awarded for the breach of contract claim, which was consistent with the parties' stipulation. *See* Doc. 286. Nor do Hongda, its owners, and Vasto challenge the sufficiency of the evidence to support the jury's findings that they each committed the numerous specified acts found by the jury. They do not challenge the jury's conclusion that Hongda engaged in fraudulent transfers nor do they seek to overturn the verdict that Sunfit did not breach the contract. *See* Doc. 321.

Indeed, it would be difficult to do so. The evidence at trial was overwhelming that Hongda ordered NBPT from Sunfit at an agreed-upon price, that it sold this NBPT to its own customers at a higher price, and that Hongda rarely paid on time and never paid at all for millions of dollars' worth of NBPT it received from Sunfit. Instead Hongda used that money to pay its own business expenses, and, along with its owners and Vasto, to fund competing ventures in violation of the exclusivity provision in the contract with Sunfit. There is plenary evidence to support the jury's findings that Hongda never intended to live up to its obligations under the exclusivity provisions in the 2011 contract and that Hongda and its owners engaged in a pattern of deception intended to deprive Sunfit of the benefits of the contract, conspired to create Vasto to circumvent the contractual exclusivity provisions, participated in and supported the development of a NBPT plant in China to circumvent the contract, misrepresented Hongda's sales activities in North America to Sunfit, and actively solicited customers to purchase NBPT in violation of the exclusivity provisions.

These acts, especially taken together, constitute the kind of unfair and deceptive trade practices for which Chapter 75 creates a cause of action. *See Marshall v. Miller*, 302 N.C. 539, 543–48, 276 S.E. 2d 397, 400–403 (1981) (noting Chapter 75 was enacted with the purpose "to declare, and to provide civil means to maintain, ethical standards of dealing between persons engaged in business . . . ." (quoting N.C. Gen. Stat. § 75-1.1(b) (1975))); *see also White v. Thompson*, 364 N.C. 47, 52–53, 691 S.E.2d 676, 679–80 (2010). While Hongda makes a cursory effort to say that these acts are not in fact unfair trade practices, noting that a breach of contract by itself is not an unfair trade practice,

that legal proposition does not apply here. The unfair and deceptive acts and practices found by the jury and the evidence and testimony presented at trial more than demonstrate that this breach was "surrounded by substantial aggravating circumstances" sufficient to constitute unfair and deceptive trade practices. *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 217–18, 646 S.E.2d 550, 558–59 (2007) (collecting cases).

To the extent Hongda, its owners, and Vasto move for a new trial on the liability issues decided by the jury and the amount of breach of contract damages, the motion is denied.

Hongda, its owners, and Vasto do contend that the jury's verdict awarding damages for Sunfit's unfair trade practices claims is against the clear weight of the evidence and that upholding the verdict would result in a miscarriage of justice. *See* Doc. 321. Putting aside Hongda's unwarranted attacks on Sunfit's counsel, which are frivolous and warrant no discussion, their primary contention is that the damages amount was calculated based on evidence of lost profits, which was not admitted for that purpose and which if allowed to stand would result in a miscarriage of justice.

At trial, Sunfit had the burden of presenting evidence of damages for its Chapter 75 claims based upon a standard from which the jury could calculate damages "with reasonable certainty," and which was "sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion." *Compton v. Kirby*, 157 N.C. App. 1, 17, 577 S.E.2d 905, 915 (2003).

As all parties agree, the only evidence supporting the jury's $6 million award against Hongda for unfair and deceptive trade practices came from Sunfit's lost profits

13

calculation based on the contract's minimum purchase requirement. *See supra* n. 6.[10]

While Sunfit's counsel suggested $12 million, calculated at $3 million in lost profits for each of the four years remaining on the contract after Hongda breached and Sunfit cancelled, the jury chose half that amount. There was some evidence that the contract would only be in place for three years, not five, so it may be that the jury found Sunfit had been injured by losing profits of $3 million per year for two years instead of four, or it may be that the jury concluded four years of damages was too speculative or was otherwise inappropriate.

There was evidence to support the argument made by Sunfit and the lost profit calculations made by the jury. Sunfit's representative, Weihang Wang, was knowledgeable about the plant in China where the NBPT was manufactured and with the finances of Sunfit, and he testified that Sunfit's profit margin on one metric ton of NBPT was at least $6,000. Doc. 321-1 at 21–22. The 2011 contract between Sunfit and Hongda required Hongda to buy a minimum of one million pounds of NBPT a year from Sunfit. Doc. 1-1 at ¶ 5. The math comes to roughly $3 million in annual profit. The plain language of the contract imposed that minimum purchase obligation on Hongda for five years, as one of Hongda's owners testified. Doc. 1-1 at ¶ 1; Doc. 324-1 at 3–4.

---

[10] The Court instructed the jury not to include any damages for breach of contract in the Chapter 75 damages it awarded against Hongda in an effort to avoid any jury confusion over duplication of damages. In view of the jury's findings on liability, it would have been appropriate to treble the breach of contract damages found by the jury as damages for the unfair trade practices when entering judgment. *See* discussion *supra*. Apparently deciding that one can't get blood from a turnip, *see* Doc. 330, Sunfit did not ask the Court to do so.

Without deciding whether this evidence was sufficient to support the jury's damages finding, the Court concludes that the evidence from Mr. Wang about the profit margin was not admissible to establish lost profits and that a remittitur is appropriate in the unusual situation here. While Mr. Wang's testimony was relevant to the disputed issue of whether Sunfit breached the exclusivity provisions, it was not admissible to establish lost profits as an element of damages because Sunfit did not give notice in its Rule 26(a)(1)(A)(iii) disclosures that it would be relying on evidence of lost profits to form the basis for unfair trade practices damages. *See* Docs. 330-1, 330-2; *see also Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 WL 1596722, at *2 (E.D.N.C. May 7, 2012) ("When a party 'fails to provide information . . . as required by Rule 26 (a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless.'" (quoting Fed. R. Civ. P. 37(c)(1)).[11]

The testimony from Mr. Wang arose in the context of explaining why Sunfit had no motive to breach the exclusivity provisions in the contract with Hongda and was

_____

[11] Hongda attempts to rely on two discovery disputes to support its view that Sunfit never sought lost profits. *See* Doc. 321 at 4–6. The evidence is much weaker than Hongda contends. As Sunfit's closing argument made clear, the lost profits it sought from the jury were calculated based on the minimum amounts of NBPT Hongda was required to purchase per year, not on lost sales to other entities. The minimum amount was set forth in the contract and was unaffected by whether Sunfit did or did not make sales to other entities. The discovery disputes were related to Sunfit's sales to other entities, not to the minimum sale requirement. One of those was related to Sunfit's damages claim against a third-party defendant no longer in the case, Doc. 169-9, and the other arose from Hongda's desire to use this information to prove its own damages, not because it needed the information to rebut any claim by Sunfit for damages based on lost sales. *See* Docs. 98, 108. Given that Sunfit's closing argument was based solely on the minimum purchases required by the contract and not on actual or hypothetical post-breach sales to other entities, these discovery disputes offer only minimal support for Hongda's position.

admissible for that purpose. In the absence of an indication from Sunfit that it would be seeking lost profits damages in connection with its Chapter 75 claim, Hongda had no reason to object to this testimony or to ask for a limiting instruction. *See* Fed. R. Evid. 105 (noting evidence may be admissible for one purpose but not for another). Moreover, had Sunfit disclosed that it would be seeking lost profits on the minimum sales required under the contract as part of its Chapter 75 claim, Hongda would have almost certainly cross-examined Mr. Wang on this point at trial. Without Mr. Wang's testimony about profit margins, the evidence is insufficient to support the jury's finding that the conduct of Hongda, the owners, and Vasto caused Sunfit to lose profits on the required minimum purchases.[12]

Because the $6 million verdict against Hongda "exceeds the evidence," *Redevelopment Comm'n*, 30 N.C. App. at 397, 226 S.E.2d at 850, the Court will remit the unfair trade practices damages against Hongda and enter judgment in the sum of $3—$1 in nominal damages, trebled—on this claim. *See Estate of Hurst ex rel. Cherry v. Moorehead I, LLC*, 228 N.C. App. 571, 583–85, 748 S.E.2d 568, 577–78 (2013) (plaintiff awarded $1 in nominal damages, and thus $3 in treble damages for unfair practices violation); *Pinehurst, Inc. v. O'Leary Bros. Realty,* 79 N.C. App. 51, 61, 338 S.E.2d 918, 924–25 (1986).

---

[12] During discussions with Hongda post-trial, Sunfit seems to have either agreed substantively or decided this was not an issue worth fighting. Noting that the judgment "is almost as valuable as Monopoly money," Sunfit proposed dropping the lost profits award and submitting a proposed final judgment "in the amount of $9,867,035, trebled, against each of the losing parties," but the other parties did not agree. Doc. 330 at ¶ 6. As noted *supra* at note 10, such an award against Hongda for Chapter 75 damages would have been appropriate.

16

All parties also agree that the jury's Chapter 75 damages determination against Hongda's owners and Vasto was based on the same $6 million in lost profits plus the contract damages of $9,867,035, for a total of $15,867,035. For the same reasons set forth as to Hongda, the Court will remit the lost profits component of $6 million.

But as to the remaining damages, no remittitur is appropriate. Sunfit demonstrated with more than reasonable certainty that the unfair and deceptive trade acts and practices committed by Hongda's owners and Vasto were part of a scheme that directly led to Hongda's refusal to pay for the NBPT it ordered and received. *See TradeWinds Airlines v. C-S Aviation Servs.*, 222 N.C. App. 834, 842, 733 S.E.2d 162, 169 (2012) ("The measure of damages applicable to claims for . . . unfair and deceptive trade practices is broad and remedial[, and it] encompass[es] the concept of awarding such damages as will restore the plaintiff to his, her, or its original condition.").

Here, for example, Sunfit would not have sold NBPT to Hongda on credit had Hongda's owners not consistently and repeatedly misrepresented Hongda's intentions or if they had known that Vasto was competing with Sunfit on behalf of Hongda and its owners in violation of the exclusivity clause. Nor can it be disputed that Hongda's refusal to pay Sunfit was the result of the unfair actions of Hongda's owners and Vasto to circumvent the contract. Damages in the amount of the unpaid invoices and unrefunded VAT taxes meet the statutory goal of providing the victim of the unfair trade practices "that which was lost as far as it may be done by compensation in money." *Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 233, 314 S.E.2d 582, 585 (1984); *see also TradeWinds*, 222 N.C. App. at 841–42, 733 S.E.2d at 169.

Hongda contends that these damages should be remitted or vacated because a breach of contract standing alone cannot give rise to a Chapter 75 claim. But as noted *supra*, there was more than a breach of contract here. The evidence that Hongda's owners and Vasto were involved in a fraudulent scheme involving many unfair trade practices was more than credible and sufficient—it was overwhelming.

The method the jury used to calculate the damages is clear from the circumstances, and the amount of the unpaid invoices was undisputed at trial, as was the amount Sunfit paid in VAT taxes that it was unable to recover because of the fraudulent scheme to obtain NBPT without paying for it. The evidence fully supports the jury's finding, inherent in the verdict under the circumstances here, that Sunfit was entitled to recover damages in an amount equal to the breach of contract damages, $9,867,035, from Hongda's owners and Vasto. Hongda has identified no evidentiary errors that even arguably led to this finding. There is nothing to indicate that the lost profits evidence affected this aspect of the damages award. The Court sees no reason to remit these damages.

Therefore, the Court will remit the judgment amount as to these defendants and reduce it to $9,867,035, trebled to $29,601,105.

Remittitur requires Sunfit's consent. *See, e.g.*, *Weeks v. Holsclaw*, 306 N.C. 655, 662–63, 295 S.E.2d 596, 601 (1982) (noting a court may allow remittitur with consent of the plaintiff). In view of Sunfit's most recent filing and the reasoning of this order, the Court assumes Sunfit will consent. The Court will, however withhold entry of an amended judgment to make sure its assumption is correct. Should Sunfit not consent, the

18

Court will grant the motion for a new trial, but only on the issue of what amount of damages Sunfit is entitled to recover from Hongda, the owners, and Vasto for Chapter 75 damages.

## CONCLUSION

Over the course of the week-long jury trial, Sunfit put on strong and compelling evidence that Hongda, its owners, and Vasto engaged in a fraudulent scheme to obtain NBPT from Sunfit without paying for it, to misappropriate money owed to Sunfit and use it for their own purposes, and to unfairly compete with Sunfit despite an agreement to the contrary. In furtherance of this scheme, Hongda, its owners, and Vasto engaged in the numerous unfair and deceptive acts and practices discussed *supra*, which were proven at trial. The evidence was more than sufficient for the jury to find in Sunfit's favor. However, because the jury's unfair and deceptive trade practices damages were based in part on a lost profits theory that Sunfit did not disclose it would pursue before trial, remittitur is proper, if Sunfit consents.

It is **ORDERED** that the plaintiffs' and third-party defendants' motion for a new trial or new trial nisi remittitur in the alternative, Doc. 320, is **DENIED IN PART** and **GRANTED IN PART** as follows:

1. The plaintiffs' and third-party defendants' motion for a new trial nisi remittitur, Doc. 320, is **GRANTED in part** to the following limited extent:

    a. Sunfit's Chapter 75 damages from Hongda are remitted to $3, and its Chapter 75 damages from Gary David McKnight, Raymond Perkins, Wei Xu, and Vasto Chemical, Co., are remitted to $29,601,105 each.

b.  Sunfit has the option of accepting the reduced awards or proceeding to a new trial on the Chapter 75 damages as against all of the movants.

c.  If Sunfit consents to remittitur, it shall file its consent in writing no later than March 23, 2020, and the Court will enter the attached amended judgment.  If Sunfit does not file written consent, the Court will vacate the parts of the judgment awarding Chapter 75 damages and order a new trial on that issue only.

2.  The plaintiffs' and third-party defendants' motion for a new trial, Doc. 320, is otherwise **DENIED**.

This the 10th day of March, 2020.

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:12-CV-1146

| | |
|---|---|
| HONGDA CHEM USA, LLC, and<br>HONGDA GROUP LIMITED, LLC, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| -against- | ) <br> ) |
| SHANGYU SUNFIT CHEMICAL<br>COMPANY, LTD. and YMS<br>AGRICULTURE INTERNATIONAL<br>CORP., | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |
| SHANGYU SUNFIT CHEMICAL<br>COMPANY, LTD., | ) <br> ) <br> ) |
| Third-Party Plaintiff, | ) <br> ) |
| -against- | ) <br> ) |
| GARY DAVID MCKNIGHT; RAYMOND<br>P. PERKINS; WEI XU; and VASTO<br>CHEMICAL COMPANY, INC, | ) <br> ) <br> ) <br> ) |
| Third-Party Defendants. | ) |

**AMENDED FINAL JUDGMENT**

WHEREAS, this matter came on for trial before a jury beginning on October 7, 2019.

WHEREAS, the jury returned its verdict on October 15, 2019. Doc. 307.

WHEREAS, the jury was presented with a special verdict sheet regarding the parties' claims for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

WHEREAS, Defendant and Third-Party Plaintiff Shangyu Sunfit Chemical Company ("Sunfit") and Defendant YMS Agriculture International, Corp. ("YMS") have moved for entry of judgment, pursuant to Rule 58 of the Federal Rules of Civil Procedure, against Plaintiffs Hongda Chem USA, LLC and Hongda Group Limited, LLC ("Hongda") and Third-Party Defendants Gary David McKnight, Raymond P. Perkins, Wei Xu, and Vasto Chemical Company, Inc. ("Vasto") (the "Third-Party Defendants").

WHEREAS, the Court concludes, as a matter of law, that the conduct engaged in by Hongda and the Third-Party Defendants was unfair or deceptive in violation of N.C. Gen. Stat. § 75.1.1.

WHEREAS, the Court has granted the motion by Hongda and the Third-Party Defendants for remittitur, Doc. ___, and Sunfit has consented. Doc. ___.

**NOW THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT**:

1.      Hongda is liable to Sunfit for breach of contract in the amount of $9,867,035;

2.      Hongda's conduct, as found by the jury, was unfair or deceptive, in commerce, and injured Sunfit in violation of N.C. Gen. Stat. § 75-1.1;

3.      Hongda is liable to Sunfit for violation of N.C. Gen. Stat. § 75-1.1 for damages distinct from the breach of contract damages in the amount of $1 trebled to $3 pursuant to N.C. Gen. Stat. § 75-16;

4.      The conduct of the Third-Party Defendants, as found by the jury, was unfair or deceptive, in commerce, and injured Sunfit in violation of N.C. Gen. Stat. § 75-1.1;

5.     The Third-Party Defendants are liable to Sunfit for violations N.C. Gen. Stat. § 75-1.1 in the amount of $9,867,035 trebled to $29,601,105 pursuant to N.C. Gen. Stat. § 75-16;

6.     Hongda fraudulently transferred $1,000,000 and $750,000 to DravCo, Inc. ("DravCo") on September 17, 2012 and September 26, 2012, respectively, in violation of N.C. Gen. Stat. § 39-23.1 *et seq.* (2012). Those transfers are avoided pursuant to N.C. Gen. Stat. § 39-23.7 (2012).

7.     Hongda fraudulently transferred $1,000,000 to Carolina Wine Distributor, LLC ("Carolina Wine") on August 21, 2012 in violation of N.C. Gen. Stat. § 39-23.1 *et seq.* (2012); that transfer is avoided pursuant to N.C. Gen. Stat. § 39-23.7 (2012).

8.     Pursuant to North Carolina General Statutes § 1-358, the Court hereby enjoins Hongda, Vasto, McKnight, Perkins, Xu, Carolina Wine and/or DravCo from transferring, disposing of, or in any manner interfering with their respective property that is not exempt from execution of Judgment.

9.     The Clerk of the Court is directed to enter final judgment in this matter against Hongda and in favor of Sunfit forthwith in the amount of $9,867,038.

10.    The Clerk of the Court is directed to enter final judgment in this matter against the Third-Party Defendants and in favor of Sunfit forthwith in the amount of $29,601,105;

11.    The Court hereby dismisses with prejudice Hongda's remaining claims against Sunfit and YMS in this action; and

12.     Taxable costs are awarded to Sunfit and YMS as the prevailing parties in this matter.  Any award of attorneys' fees shall be addressed by a separate Judgment.


        **SO ORDERED:**  This the _____ day of March, 2020.



                                        _____
                                        UNITED STATES DISTRICT JUDGE